596 S.E.2d 375

**The STATE, Respondent**

v.

**Corey SPARKMAN, Petitioner.**

No. 25816.

Supreme Court of South Carolina.

Heard March 4, 2004.

Decided May 3, 2004.

Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and John Gregory Hembree, of Conway, for respondent.

Chief Justice TOAL:

Petitioner Corey Sparkman ("Sparkman") was convicted of armed robbery and sentenced to twenty years in prison. He now seeks to reverse the Court of Appeals' ruling affirming the trial judge's denial of his motion for mistrial. Sparkman alleges that during *voir dire*, the jury's foreman, Arthur Scott ("Scott"), intentionally concealed that he had been the victim of an assault and that this concealment materially diminished Sparkman's use of peremptory challenges and wrongfully influenced the jury, resulting in his conviction. We disagree and affirm Sparkman's conviction.

### FACTUAL/PROCEDURAL BACKGROUND

On March 31, 2001, at approximately 2:15 a.m., two men entered a Days Inn in Myrtle Beach. Christopher Newton ("Newton"), the assistant manager, was in the back office counting money when he heard the men at the front desk. When the men requested a room, Newton told them that none

were available, so the men turned to leave. As Newton returned to the back office, the men accosted him. The taller of the two men drew a switchblade and demanded money. He took money from the cash drawers and then demanded that Newton open the safe. After Newton told the men that he could not open the safe, the taller man stabbed Newton twice in the shoulder. Then, the shorter man struck Newton in the head and knocked him unconscious. When Newton regained consciousness, he called the police.

During questioning, the police asked Newton to identify his attackers out of a photo line-up. He identified Sparkman as one of his attackers—on two separate occasions—from two different photographs.[1]

During *voir dire*, the trial judge asked the venire members whether they had been a victim of a serious crime. Scott did not stand up. The trial judge asked those who stood up whether being a victim of a crime would affect their ability to be impartial during deliberation, and they all replied that it would not. None of the people who stood up were drawn for the jury. However, Scott was drawn and named foreman.

After deliberating for eight hours, the jury found Sparkman guilty.[2] Because the jury did not present a verdict until the late evening, the trial judge postponed Sparkman's sentencing hearing until the following morning.

Sometime before the sentencing hearing, a member of the jury, Regina Jenerette ("Jenerette"), contacted the public defender's office and told Sparkman's attorney that a fellow juror might have decided to convict Sparkman based upon "something that happened in [sic] him in the past." At the hearing, Jenerette testified that during jury deliberation, upon discussing eyewitness credibility, Scott announced that forty years ago he had been the victim of an attack and that he

---

1. Newton identified Sparkman as the man who knocked him unconscious. His eyewitness testimony was the sole evidence connecting Sparkman to the crime.

2. After six and a half hours, the jury reported being deadlocked and the trial judge gave an *Allen* charge. *See Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (the trial judge may give a jury charge urging jury members to reach a verdict).

would never forget the face of his attacker.[3] The trial judge questioned Scott about the past incident, asking Scott why he did not stand up during *voir dire* and inform the parties that he was a victim of a serious crime. Scott explained that he did not remember his attack until after deliberations began and that he was unsure whether the attack was a "serious" crime.

The trial judge then asked every jury member whether Scott's recount of his attack affected their decision to convict Sparkman, and they unanimously replied that it did not, including Jenerette.

Sparkman's counsel then made a motion for mistrial, which was denied, and the Court of Appeals affirmed. Sparkman submits the following issue for review:

> Did the Court of Appeals err in affirming the trial judge's denial of Sparkman's motion for mistrial based upon juror misconduct?

## Law/Analysis

Sparkman argues that this Court should overturn his conviction because (1) Scott intentionally concealed that he was the victim of a serious crime during *voir dire%;* and (2) in telling the jury that he would never forget his attacker, Scott unfairly heightened the credibility of the victim's eyewitness testimony, which is the only evidence connecting Sparkman to the crime. Sparkman asserts that his trial counsel would have used one of eight remaining peremptory strikes to strike Scott had counsel known about Scott's attack, and consequently the trial judge erred in denying his motion for a mistrial. We disagree.

A trial judge's ruling on a motion will not be disturbed absent an abuse of discretion amounting to an error of law. *State v. Harris,* 340 S.C. 59, 63, 530 S.E.2d 626, 628 (2000).

This Court granted a criminal defendant a new trial because a juror failed to provide the trial judge with an honest answer

---

3. Scott and his wife (then girlfriend) were attacked in a public place in St. Louis, Missouri. They were sitting on a wall when two strangers rushed them and assaulted them. Scott had his tooth chipped during the incident.

to a question asked during *voir dire.* *State v. Woods,* 345 S.C. 583, 550 S.E.2d 282 (2001). In *Woods,* during *voir dire,* a juror failed to inform the parties that she worked as a volunteer victims' advocate in the solicitor's office. The Court developed a two-part test to determine whether a juror's failure to disclose a potential bias warranted granting the defendant a new trial. First, the court determines if "the juror intentionally concealed the information during *voir dire,*" and if the answer to the first inquiry is yes, the court must then "determine if the information concealed would have supported a challenge for cause or would have been a material factor in the use of respondent's peremptory challenges." *Id.* at 588–590, 550 S.E.2d at 284–285 (citing *State v. Kelly,* 331 S.C. 132, 146, 502 S.E.2d 99, 106–107 (1998)).

## Intentional or Unintentional Concealment

 Whether a juror's failure to respond is intentional is a fact intensive determination that must be made on a case-by-case basis. *Woods,* 345 S.C. at 588, 550 S.E.2d at 284. In *Woods,* this Court distinguished intentional concealment from unintentional concealment:

> intentional concealment occurs when the question presented to the jury on *voir dire* is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable. Unintentional concealment, on the other hand, occurs **where the question posed is ambiguous or incomprehensible to the average juror,** or where the subject of the inquiry is insignificant **or so far removed in time that the juror's failure to respond is reasonable under the circumstances.**

*Id.* (emphasis added).

The Court of Appeals held that Scott's concealment was unintentional. *State v. Sparkman,* Op. No.2003–UP–165 (Ct. App. Filed February 27, 2003). We agree that Scott's failure to recall his attack was reasonable under the circumstances.

First, Scott's attack occurred approximately forty years ago—a lapse of time that we believe renders his failure to respond reasonable. Scott testified that he did not remember his attack until he began to discuss whether he believed that

Newton's eyewitness testimony was credible. In our review, it is reasonable that Scott did not recall his attack until he began to draw from his own experiences while considering the evidence.

Second, Scott testified that he was unsure whether his attack was a "serious crime." We understand that the term "serious crime" is ambiguous and recognize that it was reasonable that Scott was unable to distinguish between "serious" crimes and other, "non-serious" crimes.

We find that Scott unintentionally concealed that he was the victim of an attack.

### Concealment as a Material Factor in Defense's Use of Peremptory Challenges

■ The Court of Appeals held that if Scott's concealment was unintentional, the court does not "need to determine whether the information would have supported a challenge for cause or would have been a material factor in the defense's use of a peremptory challenge." *State v. Sparkman*, Op. No.2003–UP–165 (Ct.App. Filed February 27, 2003). In *Woods*, we held that "where the failure to disclose is innocent, no inference of bias can be drawn." *Woods*, 345 S.C. at 588, 550 S.E.2d at 284.

Because Scott's concealment was unintentional our inquiry is over, however, we fail to see how Sparkman was prejudiced given that the trial judge questioned the jury after the verdict. In *Woods*, this Court said, "[w]here a juror, without justification, fails to disclose a relationship, it may be inferred, **nothing to the contrary appearing**, that the juror is not impartial." *Id.* (emphasis added).

After being informed of Scott's attack, the trial judge asked every member of the jury, individually, if Scott's comments persuaded them to convict Sparkman and no one answered affirmatively, including Regina Jenerette. Usually we must develop inferences of jury bias because we do not have the luxury of post-verdict juror testimony. However, in this case, the juror testimony is clearly "contrary" to an inference of bias or prejudice, and the trial judge was in the best position to make a factual decision concerning the effects of Scott's alleged misconduct. *See Harris*, 340 S.C. at 63, 530 S.E.2d at

627 (2000) (citing *Kelly,* 331 S.C. at 141, 502 S.E.2d at 104) ("The trial court has broad discretion in assessing allegation of juror misconduct ... [t]he determination of whether extraneous material received by a juror during the course of the trial is prejudicial is a matter for determination by the trial court.")

## Conclusion

We hold that the Court of Appeals did not err in upholding Sparkman's conviction because (1) Scott did not intentionally conceal that he had been the victim of an attack, and (2) all of the jurors testified that Scott's recount of his attack did not affect their decision to convict Sparkman. Therefore, we AFFIRM the Court of Appeals' ruling upholding Sparkman's conviction.

MOORE, WALLER, PLEICONES, JJ., and Acting Justice ROGER M. YOUNG, concur.