727 S.E.2d 32

**The STATE, Respondent,**

v.

**Phillip MILLER, Appellant.**

**No. 4977.**

Court of Appeals of South Carolina.

Heard Oct. 19, 2011.
Decided May 23, 2012.
Rehearing Denied July 26, 2012.

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General William M. Blitch, Jr., all of Columbia; and Solicitor Douglas A. Barfield, Jr., of Lancaster, for Respondent.

FEW, C.J.

Phillip Miller appeals his conviction for possession with intent to distribute crack cocaine. He argues the trial court erred in admitting the drugs into evidence and in denying his motion for a new trial based on a juror's failure to respond to a question asked during voir dire. We affirm the admission of the drugs. As to the ruling on the new trial motion, we reverse the trial court's finding that the information the juror concealed would not have been a material factor in Miller's use of his peremptory challenges. We remand for a factual determination of whether the juror intentionally concealed the information.

## I. Facts and Procedural History

Miller was tried in Lancaster County. During voir dire, the trial court asked potential jurors: "Is there any member of the jury panel who has been a victim of a crime in Lancaster County or member of your immediate family a victim of a crime ... ?" Ten months earlier, the juror at issue testified for the State in a Lancaster County assault and battery with intent to kill (ABWIK) trial of a man accused of stabbing the juror's mother. Despite this, the juror did not respond to the voir dire question. Defense counsel had two peremptory strikes remaining when the juror was seated.

The jury found Miller guilty. After the verdict was published but before the jury was released, former Lancaster County assistant solicitor William Frick entered the courtroom. Frick was one of the prosecutors in the ABWIK trial, and he "immediately recognized" the juror. At his first opportunity, which was after the trial court excused the jury, Frick told

50

Miller's lawyer about the juror's involvement in the ABWIK trial.

Miller filed a motion for a new trial based on the juror's failure to disclose the attack on her mother. At the hearing on the motion, Miller offered an affidavit prepared by Frick. In the affidavit, Frick explained that he interviewed the juror before the ABWIK trial and conducted her direct examination. Based on Frick's interactions with the juror, he stated he was "absolutely certain" of her identity. Miller also offered the indictment, the sentencing sheet, and a docket report from the ABWIK trial. However, neither the State nor Miller contacted the juror, nor did she appear at the hearing. The trial court did not rule on the motion at the hearing. Instead, the court left the record open to give the parties a chance to subpoena the juror to testify. The juror was never called to testify. The court later denied Miller's motion in a written order.

## II. Denial of Motion for New Trial

The trial court must grant a motion for a new trial based on a juror's failure to disclose information requested during voir dire "when the court finds the juror intentionally concealed the information, and that the information concealed would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges." *State v. Woods*, 345 S.C. 583, 587, 550 S.E.2d 282, 284 (2001). A circuit court's ruling on a new trial motion will not be disturbed absent an abuse of discretion amounting to an error of law. *State v. Sparkman*, 358 S.C. 491, 495, 596 S.E.2d 375, 377 (2004).

### A. Material Factor

The trial court based its decision solely on the second prong of *Woods*, ruling that the concealed information would not have supported a challenge for cause and would not have been a material factor in Miller's use of his peremptory challenges. The written order states in its entirety: "Defendant's motion for a new trial is denied. The issue raised in Defendant's motion is not a material factor, because there is

no victim in the Defendant's case and there is no violent crime in the Defendant's case."[1]

We believe the trial court took too narrow a view of materiality. "Material" means "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." *Black's Law Dictionary* 1066 (9th ed.2009). Here, a juror failed to disclose that, just ten months earlier, she participated in a criminal trial in which a man who had stabbed her mother was successfully prosecuted by the same solicitor's office that was prosecuting Miller. This information would have been significant to Miller, and therefore a material factor, in deciding how to use his peremptory challenges. Accordingly, we find the trial court committed an error of law.

The State argues the information concealed by the juror would not have been a material factor because unlike the ABWIK case, Miller's case concerned drug possession, involved no weapons or violence, and had no "other logical connection to the trial involving her mother's attacker." We disagree. The "logical connection" that makes the information material is the solicitor's office, which prosecuted both defendants and with which the juror cooperated in convicting the person who stabbed her mother. The focus of the voir dire question on crimes occurring in Lancaster County indicates that at least part of the question's purpose was to identify potential jurors who may be biased for or against members of the local criminal justice system, such as prosecutors, defense attorneys, or law enforcement officers.

The supreme court's holding in *Woods* supports our conclusion. In that case, the defendant was convicted of possession with intent to distribute crack cocaine. 345 S.C. at 585, 550 S.E.2d at 283. The defendant later learned that before his

---

1. The trial court's ruling that the information would not support a challenge for cause is implicit in its ruling denying the motion, as the information obviously would not support such a challenge, and the court would otherwise have been required to consider the intentional concealment prong of *Woods*. *See State v. Lowery*, 332 S.C. 261, 266, 503 S.E.2d 794, 797 (Ct.App.1998) (explaining that a juror may be excused for cause "only if her opinions would prevent or substantially impair the performance of her duties as a juror in accordance with her oath and instructions." (citation and quotation marks omitted)).

trial, one of the jurors had volunteered as a victim's advocate in the solicitor's office that prosecuted him. *Id.* In analyzing whether this information would have been a material factor, the supreme court focused on the juror's connection to the prosecution, not on whether she had participated in factually similar cases. *See* 345 S.C. at 590, 550 S.E.2d at 286 (concluding "a juror's previous three year relationship as a victims' advocate with the prosecuting solicitor's office would be a material factor in the use of a criminal defendant's peremptory challenges"). Despite the differences between the drug case being tried and the crimes that connected the juror to the solicitor's office, the supreme court found the juror's previous relationship with the office would have been a material factor. *Id.*

The situation here is comparable to *Woods* because of the relationship between the juror and the solicitor's office. Standing alone, a juror's participation in a factually dissimilar trial might not be significant in trial counsel's decisions on peremptory strikes, particularly if the earlier trial occurred in another state or even a different county. Here, however, the information withheld has significance beyond the nature of the other case. The juror's participation in the ABWIK trial reveals a relationship between the juror and the solicitor's office prosecuting Miller. The mere existence of this relationship is significant. The fact that this relationship developed in the context of the juror's participation in the office's successful attempt to incarcerate a man who attacked her mother increases its significance.

We hold the information withheld by the juror would have been a material factor in the use of Miller's peremptory challenges in this case. The information also could not support a challenge for cause. Therefore, we reverse.

## B. Intentional Concealment

The trial court made no factual determination on the first prong of the *Woods* test—whether the juror intentionally concealed the information. Because we believe this determination should be made by the trial court based on information that is not in the record before us, we remand the case to the trial court.

At the hearing before the trial court, the State argued the juror must provide an explanation before the court could decide if the concealment was intentional. The assistant solicitor stated:

I don't know how we can answer whether she understood it, didn't understand it, didn't hear it, thought you were referring to a case involving the same prosecutors and defense lawyers that are here. We don't have that information about her and ... I'd argue it's probably fatal to the motion without having some testimony or explanation from her.

The trial court disagreed with the State's argument, stating:

[*Woods* ] says "reasonably comprehensible to the average juror".... So they ... put it on the reasonable man type of concept; i.e., a reasonable average juror, not the individual ... state of mind of the juror at the time they didn't reveal information[. That] is the way I interpret the case, which is contrary to what you're saying.

After much discussion, the trial court returned to the question of the juror's testimony, stating to the assistant solicitor:

Your initial argument was that you felt like there's no way I could make this decision without knowing why she didn't [answer] and whether it was intentional or not and [I] can't make the determination of intention without having talked with her. So I'm offering the opportunity to bring her in under oath and ask her the question if you think that's necessary to your argument.

The assistant solicitor then stated "I think it's necessary to his argument." The trial court's response and the ensuing dialogue indicate the trial court believed that if the juror's testimony was necessary, the responsibility to obtain it belonged to the State.

The Court: Okay. Well, he doesn't think so. You're the one who brought it up.

Solicitor: Yes, sir.

The Court: Why don't we do this? If you want to do that, you think about it and let me know. We'll reconvene the hearing, we'll issue a subpoena, and we'll bring her in, put her under oath and take her testimony. If I have to come to Lancaster to do that, I'll do that.

Solicitor: Yes, sir, I appreciate you giving us that opportunity.

█ Thus, the trial court apparently believed the question of intentional concealment should be decided objectively, and the juror's testimony was not necessary to either party's position. We disagree. In *Woods,* the supreme court defined intentional concealment as follows:

[I]ntentional concealment occurs when the question presented to the jury on *voir dire* is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable. Unintentional concealment, on the other hand, occurs where the question posed is ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances.

345 S.C. at 588, 550 S.E.2d at 284. This definition suggests an objective component to the analysis, which is not dependent on the juror's testimony. However, we interpret *Woods* to support a subjective analysis, in addition to an objective one, in which the trial court considers the testimony of the juror if it is reasonably available.

The supreme court stated in *Woods:* "whether a juror's failure to respond is intentional is a fact intensive determination which must be made on a case by case basis." 345 S.C. at 588, 550 S.E.2d at 284. Ordinarily, the juror's testimony is part of the basis of that determination. *See Sparkman,* 358 S.C. at 496–97, 596 S.E.2d at 377 (finding juror's failure to respond to voir dire question seeking to identify victims of "serious" crimes was reasonable, where juror testified he did not immediately recall that he had been assaulted forty years earlier and was not sure if the assault was a "serious" crime). The juror testified in *Woods,* and the court carefully considered the juror's testimony in concluding she intentionally concealed the information. 345 S.C. at 586–87, 589, 550 S.E.2d at 284, 285 (noting the juror "offered inconsistent explanations for her failure to respond"). The court specifically noted the possibility that "contrary" information may affect the inferences to be drawn from a juror's failure to disclose a relationship: "Where a juror, without justification, fails to disclose a

relationship, it may be inferred, *nothing to the contrary appearing,* that the juror is not impartial." 345 S.C. at 587–88, 550 S.E.2d at 284 (emphasis added). Finally, in *Williams ex rel. Wilford v. Barnes Hospital,* 736 S.W.2d 33 (Mo.1987), a case relied on by our supreme court in *Woods,* the Missouri Supreme Court made a juror's actual recollection of the information concealed part of its intentional concealment analysis. *See* 736 S.W.2d at 36 (cited in *Woods,* 345 S.C. at 588, 550 S.E.2d at 284–85).

Because the juror in this case did not testify, potentially important facts are missing from the record before us. Further, the record raises concerns that the voir dire question may not have been asked separately, but as one in a long series of questions with no pause in between to allow jurors a chance to respond. In this context, it is uncertain whether the question was reasonably comprehensible. Therefore, we find it necessary to remand to the trial court to determine whether the juror intentionally concealed the information.[2]

## C.  Burden of Proof

The dissent argues that Miller had the burden of proof and that his conviction should be affirmed because he failed to meet his burden. In light of the approach taken by the trial court, however, we do not find it appropriate to base our decision on the burden of proof. The State argued the juror's testimony was necessary, and Miller argued it was not. By interpreting *Woods* "contrary" to the State's argument, the trial court essentially ruled that it was not Miller's obligation to obtain the testimony of the juror. It is counterintuitive to penalize Miller for not disagreeing with the trial court on an issue as to which the court ruled in Miller's favor. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000) ("It would be inefficient and pointless to

---

**2.** At oral argument before this court, the State took the position that if a factual finding is required on the question of intentional concealment, we should remand for the trial court to make the finding. After a lengthy discussion on this procedural question, the court asked the State: "So, on the first prong, if we disagree with this circuit judge on the second prong, you're asking us to remand to the circuit court for a ruling on the facts?" The State replied: "That's correct."

require a respondent to return to the judge and ask for a ruling on other arguments.").

Moreover, our courts have not clearly indicated that the defendant has the burden of proving the juror's concealment of the information was intentional. In support of the position that the defendant does bear the burden, the dissent cites only *State v. Bonneau*, 276 S.C. 122, 276 S.E.2d 300 (1981), which does not involve a motion for a new trial based on a juror's intentional concealment of information during voir dire. Rather, as the *Bonneau* court stated, "[t]he sole question for determination of the court [was] whether the fact that an alternate juror was in the jury room briefly after the judge completed his charge denied the defendant a fair trial." 276 S.C. at 123, 276 S.E.2d at 300. In *Woods*, the supreme court did not expressly impose the burden of proof on the defendant as to this issue.[3] Describing the two-prong test trial courts should use, the supreme court stated "a new trial is required only *when the court finds* " both of the prongs exist. 345 S.C. at 587, 550 S.E.2d at 284 (emphasis added). The supreme court then stated a trial court may infer the juror was not impartial "*nothing to the contrary appearing.*" 345 S.C. at 587–88, 550 S.E.2d at 284 (emphasis added). Explaining its decision in *State v. Kelly*, 331 S.C. 132, 502 S.E.2d 99 (1998), the *Woods* court wrote "we stated that *the first inquiry* in the juror disqualification analysis is whether the juror intentionally concealed the information." 345 S.C. at 588, 550 S.E.2d at 284 (emphasis added). Finally, the *Woods* court stated "where a juror's response to *voir dire* amounts to an intentional concealment, *the movant need only show* that the information concealed would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges." 345 S.C. at 589, 550 S.E.2d at 285 (emphasis added).

We do not interpret this language to mean there is no burden of proof. Rather, we interpret the lack of a clear

---

3. In *Woods*, the supreme court affirmed this court's decision to reverse the trial court and grant a new trial. Significantly, this court also did not place the burden of proof on the defendant. *State v. Woods*, 338 S.C. 561, 564, 527 S.E.2d 128, 129–30 (Ct.App.2000) (stating "the juror did not justify her failure to disclose particular information that was specifically sought by a *voir dire* question").

statement about it to indicate that the existence and scope of any burden remains an open question. This uncertainty magnifies the significance of the trial court's interpretation of *Woods* as not requiring the testimony of the juror. Under these circumstances, we decline to decide this case by holding Miller failed to meet a burden of proof. If the burden of proof remains an issue on appeal from the trial court's ruling on remand, our appellate courts may address it on a complete record.

## III. Admission of Drugs into Evidence

Miller argues the trial court erred in admitting drugs into evidence because the State failed to establish a sufficient a chain of custody for the drugs. We affirm the trial court's ruling pursuant to Rule 220(b)(1), SCACR, and the following authorities: *State v. Sweet*, 374 S.C. 1, 4–5, 647 S.E.2d 202, 204 (2007) (stating a trial court's decision to admit evidence will not be reversed on appeal absent an abuse of discretion); *State v. Taylor*, 360 S.C. 18, 22, 598 S.E.2d 735, 737 (Ct.App. 2004) (stating a party offering into evidence fungible items such as drugs must establish a chain of custody as far as practicable); *State v. Carter*, 344 S.C. 419, 424, 544 S.E.2d 835, 837 (2001) ("[W]here there is a weak link in the chain of custody, as opposed to a missing link, the question is only one of credibility and not admissibility."); *Sweet*, 374 S.C. at 6, 647 S.E.2d at 205–06 ("[I]f the identity of each person handling the evidence is established, and the manner of handling is reasonably demonstrated, no abuse of discretion by the trial court is shown in admitting the evidence absent proof of tampering, bad faith, or ill-motive."); *State v. Hatcher*, 392 S.C. 86, 94, 708 S.E.2d 750, 754 (2011) (holding a mere suggestion that evidence tampering could possibly have occurred is insufficient to establish a break in the chain of custody).

## IV. Conclusion

We affirm the trial court's decision to admit the drugs into evidence. We reverse the court's ruling that the information the juror concealed would not have been a material factor in Miller's use of his peremptory challenges. We remand to the trial court for a determination as to whether the juror intentionally concealed the information.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

KONDUROS, J., concurs.

THOMAS, J. (concurring and dissenting).

I agree with the majority's decision to uphold the admission of the drugs into evidence. I disagree, however, with the majority's decision to remand this matter to the circuit court for a determination as to whether the juror intentionally concealed that her mother had been the victim of a crime. Although I agree with the majority that the juror's failure to disclose that her mother had been the victim of a violent crime could have been a material factor in the defense's decision to use one of its peremptory challenges, I note the trial judge never ruled—nor was he requested to rule—as to whether this failure could have supported a challenge for cause. *See State v. Woods*, 345 S.C. 583, 587, 550 S.E.2d 282, 284 (2001) (stating concealment of information by a juror is grounds for a new trial only when (1) the court finds the juror intentionally concealed the information and (2) the information concealed would have supported a challenge for cause or would have been a material factor in the use of the requesting party's peremptory challenges).

When a party argues on appeal that a new trial should have been granted because a juror failed to disclose information during the voir dire, the first question for the appellate court is whether the concealment was intentional. *State v. Kelly*, 331 S.C. 132, 146, 502 S.E.2d 99, 106–07 (1998). There are two prerequisites for intentional concealment. First, the voir dire question must be "reasonably comprehensible to the average juror." *Woods*, 345 S.C. at 588, 550 S.E.2d at 284. In addition, the party seeking a new trial must show "the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable." *Id.* I would hold Miller satisfied neither prerequisite in this case.

The majority is correct that a determination of intentional concealment should be made by the trial judge; however, the trial judge cannot make such a finding unless evidence is presented upon which he can rule. Miller, as the moving party, had the burden to present that evidence. *Cf. State v.*

*Bonneau,* 276 S.C. 122, 125, 276 S.E.2d 300, 301 (1981) ("It is, of course, incumbent upon an appellant in this court to prove that he was denied a fair trial.").

The majority has quoted portions of the transcript in which the trial judge stated he interpreted *Woods* to impose an objective standard in determining whether a juror's nondisclosure was deliberate and the juror's testimony was therefore not necessary to either party's position. The majority construes the trial judge's statements as a ruling in Miller's favor and asserts it would be counterintuitive to penalize him for not disagreeing with it. The portions of the colloquy following what the majority has quoted, however, show the trial judge offered both Miller and the State the opportunity to subpoena the juror at a later date to determine her intention when she failed to advise the court about her participation in the earlier trial:

> Defense Counsel: Right. Well, but the issue is not whether—it's simply would I have used it had she said yes, she was, and that really, the material factor is really in the mind—is what the judge believes is in the mind of the defense or whoever is exercising the strike, but we'll try to get you some more guidance on that.
>
> The Court: That's all I'm asking you. If you all want to take her testimony, let me know and we'll come over to Lancaster one day and see what she's got to say.
>
> Solicitor: Thank you, Judge.
>
> Defense Counsel: Thank you. So within 30 days you want an order with all this?
>
> The Court: Do a short order and say it's under advisement and you all will have 30 days to file your memo. If you would like to take her testimony, let me know and I'll reconvene the hearing and we'll come to Lancaster and we'll get the clerk to subpoena her and bring her in to hear what she's got to say. If you want to do that. If you don't, that's fine. I'm not trying to tell you how to try your case. I'm just affording you the opportunity.
>
> Defense Counsel: Thank you, Judge.[4]

---

4. The record did not include an order prepared by either Miller or the State pursuant to these instructions; however, defense counsel's statements to the court suggest he understood he was responsible for

The trial court left the record open after the motion hearing for counsel to take testimony from the juror on this issue. Neither the State nor the defense took advantage of this opportunity despite having nearly a year to do so. Under these circumstances, I would hold a remand is unnecessary. *See State v. Cooper,* 334 S.C. 540, 551, 514 S.E.2d 584, 590 (1999) (noting in response to the appellant's argument that the trial court should have done something more to investigate a juror's alleged misconduct, "defense counsel never requested that the trial court do anything else").

Furthermore, nothing in the record or briefs indicates the defense requested the trial judge to find the subject of the inquiry was of such significance that the juror's failure to respond was unreasonable, and no foundation was laid for such a finding. Thus, the second prerequisite for intentional concealment was not met, and this failure alone is sufficient to hold that intentional concealment, for the purposes of determining whether a new trial was warranted, was not established.

Finally, I would hold the voir dire question was not reasonably comprehensible to the average juror. As stated in the majority opinion, the trial judge inquired of potential jurors whether any of them had been a victim of a crime in Lancaster County or whether a member of "your immediate family" had been the victim of a crime. I do not think it would have been unreasonable for the juror to have understood the question to apply to only members of her household, which may not have included her mother. *Cf. Barkley v. Int'l Mut. Ins. Co.,* 227 S.C. 38, 42–43, 86 S.E.2d 602, 604 (1955) (agreeing with the view that "family" "signifies the collective body of persons living in one house," characterizing the term "immediate family" as "one more restricted in meaning and scope," and noting this term, when used in the policies of mutual benefit societies, has been held to exclude those living outside the insured's household) (quoting *Home Ins. Co. v. Pettit,* 225 Ala. 487, 143 So. 839, 840 (1932)). In addition, as the majority acknowledges, the voir dire question with which we are concerned was

---

drafting it. Whether or not such an order was prepared, the record includes a letter from defense counsel to the trial judge in which counsel states he sent a memorandum within thirty days after the hearing on Miller's new trial motion.

part of a long series of questions with no pause to allow jurors a chance to respond. Contrary, then, to the position the defense took during the hearing on Miller's new trial motion, I would decline to hold either that the question was on its face comprehensible to the average juror or that the juror's failure to respond to the question amounted to deliberate nondisclosure. *See Woods*, 345 S.C. at 588, 550 S.E.2d at 284 ("Unintentional concealment . . . occurs where the question posed is ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances."). Without the juror's testimony about her understanding of the inquiry, I would be reluctant to hold her nondisclosure amounted to a deliberate attempt on her part to mislead the court about her impartiality.

I would affirm Miller's conviction.