760 S.E.2d 111

**Susan Ann Bell LYNCH, Appellant/Respondent,**

v.

**CAROLINA SELF STORAGE CENTERS, INC., Respondent/Appellant.**

**Appellate Case No. 2012–212109.**
**No. 5213.**

Court of Appeals of South Carolina.

Heard Dec. 10, 2013.
Decided March 26, 2014.

148

Kirby D. Shealy, III, Adams and Reese, LLP, of Columbia, for Respondent/Appellant.

Kevin M. Barth and Brendan P. Barth, both of Ballenger, Barth, Hoefer & Lewis, LLP, of Florence, for Appellant/Respondent.

FEW, C.J.

Susan Ann Bell Lynch brought this premises liability lawsuit against Carolina Self Storage Centers, Inc. after a metal door at one of its storage facilities closed on her foot. Although the jury returned a verdict for Lynch, she moved for a new trial, alleging juror misconduct during deliberations and intentional concealment by a juror during voir dire. We affirm the trial court's decision to deny her motion, and all other issues raised by the parties.

## I. Facts and Procedural History

While moving furniture out of a storage unit rented from Carolina Self Storage, Lynch propped open a hinged exterior door to the storage building by placing a small table against the door. After she finished loading the furniture into her vehicle, Lynch picked up the table and turned to walk out. When the door began to close, she "put [her] foot back instinctively ... to catch the door." Due to the height be-

tween the door and the ground, the sharp metal bottom edge of the door struck the back of her heel. She suffered a deep cut "that went to the [Achilles] tendon." Several days after the incident, Lynch fell while ascending a flight of stairs and ruptured her Achilles tendon, which required surgery to repair. A month later, the wound became infected due to a bacterial infection "growing in [her] wet cast," and she underwent five surgeries to repair the wound with skin grafts.

Lynch commenced this action against Carolina Self Storage, alleging it was negligent in failing to maintain the door in a reasonably safe condition or warn her of its dangerous condition. At trial, Carolina Self Storage argued Lynch failed to prove proximate cause as to the vast majority of her medical expenses because, by ignoring her physician's medical advice to stay off her foot and keep her cast dry, she was the sole cause of the medical expenses associated with the surgery to repair her ruptured Achilles tendon and the treatment for the resulting infection. The jury returned a verdict for Lynch and awarded her $246,068.42–the exact amount of the medical expenses she claimed resulted from her injury. The jury found, however, that Lynch was fifty-percent at fault in causing her injuries, and the court reduced the verdict accordingly. *See Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (stating the law of comparative fault requires the trial court to reduce a plaintiff's damages "in proportion to the amount of his or her negligence" as determined by the jury). Lynch moved for a new trial *nisi additur,* arguing the jury failed to consider evidence of noneconomic damages. Carolina Self Storage moved for judgment notwithstanding the verdict (JNOV) on two grounds: (1) it owed no duty to Lynch; and (2) Lynch's own negligence exceeded its negligence as a matter of law. The court denied both motions.

After trial, the jury foreperson told Lynch's attorney that the jury was biased and used improper information to reach its decision. Lynch later filed an affidavit from the foreperson, who stated,

> One of the jurors stated she could not stand [Lynch's attorney] and Ms. Sue Lynch was getting nothing. I told her she could not punish [Lynch] for not liking [her attorney]. She said she did not care we would sit there until doomsday [because Lynch] wasn't going to get anything and

it would end up in a hung trial and she still would not get anything.... [Some jurors] had a problem with Ms. Lynch because ... [she] could afford to live beside a doctor.... The statement was made she must have money.... [A]nother juror spoke up and said [Lynch] had a large bank account she doesn't need the money. Another juror spoke up and said, "How do you know? Does she bank with you?" The lady that worked at the bank replied no.

The foreperson also stated in her affidavit, "I did not know we had such bias[ed] jurors until we went into deliberating.... The only thing they were concerned about was Ms. Lynch not getting anything.... I feel Ms. Lynch needs a new trial. The jurors were very much bias[ed]."

The affidavit did not provide the names of the jurors who made these comments. Lynch's attorney reviewed his firm's records and discovered one juror "was the adverse party in domestic litigation in which our firm represented her husband." Nicholas Lewis, a partner of the firm, submitted an affidavit stating he believed the juror who expressed her "intense dislike for [Lynch]'s counsel" during deliberations was the same juror previously involved in the domestic litigation.

Relying on Lewis's and the foreperson's affidavits, Lynch moved for a new trial based on (1) juror misconduct that affected jury deliberations, and (2) a juror's alleged intentional concealment during voir dire. She also requested the court hold a hearing to take the testimony of jurors regarding both grounds. The court denied the motion, finding the foreperson's affidavit was inadmissible under Rule 606(b), SCRE, and no intentional concealment occurred. The court also denied Lynch's request to take juror testimony.

## II. Lynch's New Trial Motion

We review the trial court's decision to deny Lynch's motion for a new trial under an abuse of discretion standard. *See State v. Galbreath*, 359 S.C. 398, 402, 597 S.E.2d 845, 847 (Ct.App.2004) (providing it is within the trial court's discretion to grant a new trial based on juror misconduct during deliberations or intentional concealment during voir dire); *Long v. Norris & Assocs., Ltd.*, 342 S.C. 561, 568, 538 S.E.2d 5, 9

(Ct.App.2000) (stating "[t]he granting of a new trial based on a juror's failure to honestly respond to the court's voir dire remains within the sound discretion of the trial court").

## A. Juror Misconduct During Deliberations

We first address Lynch's argument that the trial court erred in denying her motion for a new trial due to juror misconduct during deliberations.

"Initially, the trial judge must make a factual determination as to whether juror misconduct has occurred." *State v. Covington,* 343 S.C. 157, 163, 539 S.E.2d 67, 70 (Ct.App.2000). The foreperson's affidavit is the only evidence Lynch presented as to what happened inside the jury room, and thus is the only evidence to prove juror misconduct in this case. Because the trial court found the affidavit inadmissible, it found no evidence to support Lynch's motion. We find the trial court acted within its discretion to exclude the foreperson's affidavit. *See Fields v. Reg'l Med. Ctr. Orangeburg,* 363 S.C. 19, 25, 609 S.E.2d 506, 509 (2005) (stating the admission or exclusion of evidence "is within the sound discretion of the trial court," and "will not be disturbed on appeal absent an abuse of discretion").

Under Rule 606(b), SCRE, a juror's testimony or affidavit as to what occurred during deliberations is not admissible to challenge "the validity of the verdict." However, Rule 606(b) allows the admission of a juror's testimony or affidavit "on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." The trial court explained the affidavit did not "give rise to allegations of external misconduct" because it did not allege the jury received evidence or influence from outside sources.

■■■ We find there is evidence to support the trial court's determination that none of the information in the foreperson's affidavit is extraneous or relates to outside influence. Regarding the juror's statement that Lynch "had a large bank account [and] she doesn't need the money," the affidavit indicates the juror made this statement after other jurors remarked Lynch had a "friend which is a doctor's wife," and

"she could afford to live beside a doctor." Apparently based on these remarks, a juror also stated, "[Lynch] must have money." The foreperson's affidavit does not indicate that any of this discussion was based on information received outside of the evidence presented at trial. In fact, Lynch testified about her friend who was a doctor, and from that and other testimony, the jury could readily have concluded they lived "beside" each other. Although the affidavit indicates the juror who commented about Lynch's bank account worked at a bank, it also states the juror denied Lynch had an account with that bank. Thus, the record supports the trial court's finding "there was no evidence of any improper outside influence." *See State v. Zeigler*, 364 S.C. 94, 110, 610 S.E.2d 859, 867 (Ct.App.2005) ("Internal influences involve information coming from the jurors themselves.").

■ The trial court also correctly ruled the foreperson's statements that the jurors were biased against Lynch were inadmissible under Rule 606(b). *See generally* Fed.R.Evid. 606(b) advisory committee's note (stating "[t]he mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harassment"); Rule 606, SCRE note (stating "[t]he language of this rule is identical to the federal rule"). In *United States v. Benally*, 546 F.3d 1230 (10th Cir.2008), the court discussed whether juror testimony as to statements by other jurors during deliberations regarding bias toward Native Americans should be excluded under Rule 606(b). *See* 546 F.3d at 1235 (describing the argument it addresses as whether juror "testimony concerning racial bias falls outside the ambit of . . . Rule [606(b) ]"). The defendant in *Benally* was a Native American charged with assaulting an officer with a dangerous weapon. After trial, a juror claimed the jury foreman stated during deliberations, "When Indians get alcohol, they all get drunk, and . . . when they get drunk, they get violent," and at least one other juror "chimed in" to agree. 546 F.3d at 1231–32 (internal quotations omitted). The court focused its inquiry "not [on] whether the jurors became witnesses in the sense that they discussed any matters not of record, but whether they discussed specific extra-record *facts* relating to the defendant" and "whether the statements concerned specific facts

about [the defendant] or the incident in which he was charged." 546 F.3d at 1237 (internal quotation marks omitted) (emphasis in original). The Tenth Circuit found Rule 606(b) required the jurors' testimony to be excluded, and reversed the district court's decision to admit the evidence. 546 F.3d at 1241–42.

The facts of *Benally* present a far more compelling case for the admission of the juror's statements than Lynch presents. In this case, the foreperson's affidavit demonstrates nothing more than a generalized bias against a party unconnected to any specific facts about Lynch or the accident that are not in the record. Rule 606(b) requires the exclusion of testimony or affidavits by jurors that claim other jurors expressed generalized bias against a party during jury deliberations.

■ As to the juror who voiced her dislike of Lynch's attorney during deliberations, Lynch asserts this juror was biased for a reason outside the record because she was the same juror mentioned in Lewis's affidavit—the adverse party in previous litigation. Lynch argues this proves an "outside influence was improperly brought to bear upon [the] juror," and therefore the affidavit is not excluded by Rule 606(b). We disagree. The affidavit provides only speculation that the same juror made the comments, or if so, to connect the juror's bias to the previous litigation. The affidavit does not (1) name the juror who made the comments, (2) state the reason the juror held this opinion, or (3) suggest the juror developed this opinion based on something other than her observation of Lynch's attorney during trial. Thus, the record supports the trial court's conclusion that the foreperson's affidavit was inadmissible under Rule 606(b).

Because the trial court properly refused to consider the foreperson's affidavit, there was no evidence of juror misconduct, and the trial court correctly denied the motion for a new trial.

## B. Intentional Concealment During Voir Dire

■ We next address Lynch's argument regarding a juror's alleged intentional concealment of information during voir dire. Lynch argues she is entitled to a new trial under *State v. Woods*, 345 S.C. 583, 550 S.E.2d 282 (2001), because a juror

did not disclose her participation in divorce proceedings in which her ex-husband was represented by an attorney in the firm that represented Lynch in this case. In *Woods*, our supreme court articulated a two-part test to determine whether a juror's failure to disclose information during voir dire warrants a new trial. 345 S.C. at 587, 550 S.E.2d at 284 (citing *Thompson v. O'Rourke*, 288 S.C. 13, 15, 339 S.E.2d 505, 506 (1986)). First, the trial court must find "the juror intentionally concealed the information." *Woods*, 345 S.C. at 587, 550 S.E.2d at 284. If the court finds no intentional concealment occurred, the inquiry ends there. *State v. Sparkman*, 358 S.C. 491, 497, 596 S.E.2d 375, 377 (2004). However, if the court finds the juror's concealment was intentional, it must then determine whether the concealed information "would have been a material factor in the use of the party's peremptory challenges." *Woods*, 345 S.C. at 587, 550 S.E.2d at 284.

■ "[I]ntentional concealment occurs when the question presented to the jury on voir dire is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable." 345 S.C. at 588, 550 S.E.2d at 284. On the other hand, unintentional concealment occurs "where the question posed is ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances." *Id.*

■ We agree with the trial court's finding that none of the voir dire questions posed to the jury unambiguously called for this juror to disclose that her ex-husband was represented in divorce proceedings by another member of Lynch's attorney's law firm at some point in the past. The court asked the following questions during voir dire:

Is there any member of the jury panel related by blood, connected by marriage or has a close personal or social relationship with any of the attorneys involved in this case? Does any member of the jury panel have any type of business relationship ... with the law firms [involved in the case]?

We find neither of these questions would be reasonably comprehensible to the average juror such that the juror's failure

to respond with this information was unreasonable. As to the first question, it is undisputed the juror is not related by blood or marriage to any of the attorneys, and Lynch does not contend the juror had any personal or social relationship with her attorney. As to the second question, it is also undisputed that the only interaction between the juror and the law firm was through her ex-husband's representation by the firm. Thus, it was not the juror, herself, who had a business relationship with the firm. Moreover, even her ex-husband's relationship with the firm did not involve the attorney in this case, but rather a partner whose name was never mentioned during voir dire. More importantly, because the interaction between the juror and the attorney arose out of her divorce proceedings, the interaction was adverse. In fact, the premise of Lynch's argument is that the interaction was so antagonistic that the juror later acted on that antagonism against Lynch in violation of her sworn duty to be fair and impartial.

We do not believe this indirect and adverse interaction is what an average juror would characterize as a "relationship." The definition of "relationship" denotes a "connection" between people. *See Webster's New World College Dictionary* 1209 (4th ed.2008) (defining "relationship" as "the quality or state of being related; connection" and "a continuing attachment or association between persons, firms, etc."); *The American College Dictionary* 1022 (1969) (defining "relationship" as "connection; a particular connection"). The only connection between the juror and the attorney representing Lynch was indirect—through a combination of three direct relationships: (1) the juror's relationship with her ex-husband, (2) her exhusband's attorney-client relationship, and (3) the law firm partnership. In common usage, the word "relationship" has more direct and positive connotations than the juror's indirect and adverse interaction with Lynch's attorney.

■■ We do not doubt the disclosure of this information would have given Lynch valuable information to use in exercising peremptory challenges. However, the responsibility for obtaining such information falls on the attorneys to request precise voir dire questions that are reasonably comprehensible to the average juror. The first part of the *Woods* test requires a showing of intentional concealment because it is not a juror's responsibility to anticipate what an attorney might be

seeking by asking a particular question. Rather, the juror's responsibility is only to disclose information that reasonably should be disclosed in response to a question that is reasonably comprehensible. *See Woods,* 345 S.C. at 587–88, 550 S.E.2d at 284–85. The *Woods* inquiry requires us to determine whether the question was reasonably comprehensible in that it unambiguously applied to the juror's particular situation. We find the voir dire questions in this case did not clearly call for the juror to disclose this information, and her "failure to respond [was] reasonable under the circumstances." 345 S.C. at 588, 550 S.E.2d at 284.

Lynch contends the fact that two other jurors responded to these questions demonstrates the questions were reasonably comprehensible to the average juror. Specifically, Lynch points out that one juror indicated Lynch's attorney represented him in his divorce, and another stated his wife "had a lawsuit against" a partner of Lynch's attorney's firm. We are aware of no authority to support the argument that one juror's response to an ambiguous question with the same information not disclosed by another juror renders the question comprehensible, or the juror's silence intentional concealment.[1] Rather, a court should focus on the voir dire question—not on answers given by other jurors—to determine whether it unambiguously calls for the challenged juror to answer. In any event, the jurors who responded were in different situations than the juror Lynch challenges. They were either directly represented by Lynch's attorney, not just the law firm, or had a current spouse who had her own lawsuit against a partner of the firm whose name *was* mentioned during voir dire. Neither of these circumstances mirrors the indirect connection of the juror Lynch challenges.

The trial court also asked:

Is there any member of the jury panel that knows of any reason whatsoever why they should not sit on a jury in this case with particular emphasis being placed upon your ability

---

1. In *Woods,* the supreme court noted other jurors responded to the voir dire questions at issue, but did not state whether the responding jurors' situations were similar and did not rely on their responses in its analysis. 345 S.C. at 586–90, 550 S.E.2d at 283–84.

to be fair and impartial to both the plaintiff and the defense?

This court addressed the significance of a juror's failure to respond to this question in *Galbreath*, and held a juror's "decision not to respond to this question suggests that [the juror] felt she could be an impartial and fair juror." 359 S.C. at 404, 597 S.E.2d at 848. For the reasons discussed above, we find the trial court acted within its discretion to conclude no juror concealed a bias against Lynch's attorney.

We find the trial court acted within its discretion in denying Lynch's motion for a new trial because there is evidence to support the court's conclusion that no intentional concealment occurred.

### C. Request for Post–Trial Evidentiary Hearing

■ Lynch also argues the trial court erred by not taking juror testimony regarding her allegations of juror misconduct and intentional concealment. As to her claim of juror misconduct, "[t]he party contending that misconduct occurred must make a threshold showing that there was in fact an improper outside influence or extraneous prejudicial information, and if such a showing is made, the trial court should conduct a hearing." 75B Am.Jur.2d *Trial* § 1393 (2007). As we previously found, the juror's affidavit was inadmissible under Rule 606(b). Lynch presented no other evidence of juror misconduct during deliberations. Thus, the trial court properly refused to permit further inquiry because there was no threshold showing to support Lynch's claim.

Lynch relies on three cases in which the trial court took juror testimony as part of its inquiry into allegations of misconduct. In each of these cases, however, the parties presented evidence that external influences affected the jury's deliberations. *See Vestry & Church Wardens of Church of Holy Cross v. Orkin Exterminating Co.*, 384 S.C. 441, 444, 682 S.E.2d 489, 491 (2009) (evidence that a juror communicated with outside sources about the case); *State v. Elgin*, 398 S.C. 39, 43, 726 S.E.2d 231, 233 (Ct.App.2012) (evidence that a juror's mother told her the defendant was "framed"); *State v. Bantan*, 387 S.C. 412, 421, 692 S.E.2d 201, 205–06 (Ct.App. 2010) (evidence that a juror learned from an outside source that the defendants were "targeted by the police"). In each of

these cases, the juror's testimony about the external influence was admissible because Rule 606(b) does not exclude evidence that "extraneous prejudicial information" or "outside influence" was injected into deliberations. Therefore, the cases Lynch relies on are distinguishable from this case because Lynch presented no evidence of extraneous prejudicial information or an outside influence.

Regarding Lynch's argument that the trial court erred by refusing to take juror testimony on her claim of intentional concealment, we previously found the trial court posed no question that unambiguously called for the juror to disclose her ex-husband's representation in divorce proceedings by another member of Lynch's attorney's law firm. Because this finding requires the conclusion that there was no intentional concealment, there was no reason for the trial court to engage in further inquiry. *See Woods*, 345 S.C. at 588, 550 S.E.2d at 284 (holding "intentional concealment occurs when the question presented to the jury on voir dire is reasonably comprehensible to the average juror" and "[u]nintentional concealment ... occurs where the question posed is ambiguous or incomprehensible to the average juror").

Lynch argues, however, the statement in the foreperson's affidavit that a juror said "she could not stand" Lynch's attorney is additional information the trial court should have considered, and based on that information, the court should have conducted a hearing to determine if the juror who said that was the same juror described in Lewis's affidavit. This inquiry, Lynch argues, would have given the trial court a "subjective" component to the *Woods* analysis that the court would not otherwise have in this case. *See State v. Miller*, 398 S.C. 47, 54, 727 S.E.2d 32, 36 (Ct.App.2012) (stating "we interpret *Woods* to support a subjective analysis, in addition to an objective one, in which the trial court considers the testimony of the juror if it is reasonably available").[2]

---

**2.** In *Miller*, the trial court made no finding regarding the first prong of *Woods*, and denied the defendant's new trial motion based on the second prong. 398 S.C. at 50, 727 S.E.2d at 34. This court reversed as to the second prong and remanded for the trial court to hold an evidentiary hearing and make a ruling on the first prong. 398 S.C. at 49, 52, 55, 57, 727 S.E.2d at 35, 36, 38. We explained the record before us was not sufficient for this court to rule on the first prong.

Lynch's argument is premised on the admissibility of the foreperson's affidavit. As we have already determined, Rule 606(b) required the exclusion of the affidavit for the purpose of determining juror misconduct in the jury room. We also find the trial court correctly applied the rule to exclude the affidavit on the question of intentional concealment.

In some cases, our courts have considered the testimony of jurors in deciding whether a juror intentionally concealed information during voir dire. In each of these cases, however, Rule 606(b) was not an issue because the matters to which jurors testified did not involve the internal deliberations of the jury. *See Woods,* 345 S.C. at 585–86, 550 S.E.2d at 283 (stating juror testified at evidentiary hearing she worked as a volunteer in the solicitor's office that prosecuted the case); *Miller,* 398 S.C. at 55, 57, 727 S.E.2d at 36, 38 (remanding for evidentiary hearing regarding juror's failure to disclose that she testified for the State ten months earlier against man accused of stabbing juror's mother); *State v. Guillebeaux,* 362 S.C. 270, 273, 607 S.E.2d 99, 101 (Ct.App.2004) (stating juror testified at post-trial hearing regarding the failure to disclose her relationship with State's chief witness). In each of those cases, the trial court learned of the potential concealment from a source other than a juror, and the court's inquiry did not relate to the jury's deliberations.

In *Sparkman,* the trial court held an evidentiary hearing to inquire into a juror's alleged intentional concealment and considered the jury's internal deliberations. 358 S.C. at 494–95, 596 S.E.2d at 376. It was alleged that a juror made a statement during deliberations that "forty years ago he had been the victim of an attack and that he would never forget the face of his attacker." *Id.* The defendant argued this statement bolstered the credibility of the victim's eyewitness testimony. 358 S.C. at 495, 596 S.E.2d at 376. The trial court

---

398 S.C. at 52, 55, 727 S.E.2d at 35–36. *Miller* is distinguishable, and thus does not require a remand for an evidentiary hearing in this case, because the trial court here made a finding as to the first prong of *Woods,* and the record before us is sufficient to affirm the finding. Although we stated in *Miller* that the *Woods* analysis includes a subjective component, "in which the trial court considers the testimony of the juror," 398 S.C. at 54, 727 S.E.2d at 36, a trial court is not obligated to take juror testimony when the court determines it can rule on the first prong without it.

took the juror's testimony, asking why the juror did not disclose during voir dire "that he was a victim of a serious crime." *Id.* The trial court also questioned the other jury members as to whether these statements affected their decision. *Id.* Although the supreme court did not squarely address the applicability of Rule 606(b), the court appears to have considered the undisclosed information to be extraneous. *See* 358 S.C. at 497–98, 596 S.E.2d at 378 (stating "[u]sually ... we do not have the luxury of post-verdict juror testimony" and citing authority for a trial court's discretion to find prejudice based on "extraneous material received by a juror"). Thus, Rule 606(b) did not exclude the jurors' testimony, and *Sparkman* does not affect the applicability of the rule when intrinsic evidence is offered to prove intentional concealment.

Here, Lynch claims a juror's statements during deliberations in the jury room, when considered in combination with Lewis's affidavit, are evidence of intentional concealment, and thus, the trial court should have conducted a hearing. To connect these inferences, Lynch must prove events that occurred during jury deliberations by introducing the juror's affidavit and corresponding testimony for the purpose of challenging the validity of the verdict. This is exactly what Rule 606(b) was intended to prohibit. *See* Rule 606(b), SCRE (providing "[u]pon an inquiry into the validity of the verdict ..., a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations"); *State v. Franklin,* 341 S.C. 555, 562, 534 S.E.2d 716, 720 (Ct.App. 2000) (stating "the integrity of the jury system is jeopardized any time a court finds it necessary to intrude into the internal deliberation process"). The trial court correctly determined the foreperson's affidavit was inadmissible, and without this affidavit, there was no basis for the court to conduct an evidentiary hearing.

### III. Other Issues Raised on Appeal

 Both parties raised additional issues on appeal. We affirm the trial court's rulings as to each of these issues pursuant to Rule 220(b)(1), SCACR, and the following authorities:

1. The trial court properly denied Carolina Self Storage's motion for JNOV because Carolina Self Storage owed

Lynch a duty to warn or to take measures to render its premises free from the particular risk she encountered. *See Garvin v. Bi–Lo, Inc.*, 343 S.C. 625, 628, 541 S.E.2d 831, 832 (2001) (providing a merchant owes a customer the duty to exercise ordinary care in maintaining its premises in a reasonably safe condition); *Larimore v. Carolina Power & Light*, 340 S.C. 438, 445, 531 S.E.2d 535, 538 (Ct.App.2000) (stating a merchant has a duty to warn a customer "only of latent or hidden dangers of which the [merchant] has knowledge or should have knowledge"); *Callander v. Charleston Doughnut Corp.*, 305 S.C. 123, 125, 406 S.E.2d 361, 362 (1991) (defining a latent defect as one that a merchant has, or should have, knowledge of, and of which a customer is reasonably unaware); 305 S.C. at 126, 406 S.E.2d at 362–63 (providing that when a merchant should have anticipated the harm to a customer despite the obvious nature of the defect, the merchant is liable, particularly when the merchant has a "reason to expect that the [customer]'s attention may be distracted").

2. The trial court properly submitted the question of whether Lynch's own negligence exceeded any negligence of Carolina Self Storage to the jury. *See Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 712–13 (2000) ("[U]nder South Carolina's doctrine of comparative negligence, a plaintiff may only recover damages if his own negligence is not greater than that of the defendant."); *Creech v. S.C. Wildlife & Marine Res. Dep't*, 328 S.C. 24, 32–33, 491 S.E.2d 571, 575 (1997) (stating "[c]omparison of a plaintiff's negligence with that of the defendant is a question of fact for the jury to decide" unless the "only reasonable inference that may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent").

3. The trial court did not err in excluding (1) Carolina Self Storage's interrogatory answers and portions of its employee's deposition testimony, and (2) a document that showed Carolina Self Storage terminated Lynch's lease the same day her expert inspected the premises, because it was within the trial court's discretion to find this evidence was not relevant to proving Carolina Self

Storage was negligent in maintaining its premises. *See* Rule 401, SCRE ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Rule 402, SCRE ("Evidence which is not relevant is not admissible."); Rule 33(d), SCRCP (providing that interrogatory answers are admissible "to the extent permitted by the rules of evidence"); *Peterson v. Nat'l R.R. Passenger Corp.*, 365 S.C. 391, 399, 618 S.E.2d 903, 907 (2005) (stating the admission of evidence is within the sound discretion of the trial court).

4. The trial court properly denied Lynch's motion for new trial *nisi additur* because there was evidence that the medical expenses Lynch incurred to treat her injury and her resulting noneconomic losses were not proximately caused by Carolina Self Storage's negligence. *See Todd v. Joyner*, 385 S.C. 509, 518, 685 S.E.2d 613, 618 (Ct. App.2008) (upholding the denial of *additur* when the jury's verdict equaled the plaintiff's claimed medical expenses because there was evidence that the plaintiff's medical expenses or her resulting pain and suffering, or both, were not proximately caused by the defendant's tortious conduct); *Ligon v. Norris*, 371 S.C. 625, 635, 640 S.E.2d 467, 473 (Ct.App.2006) (stating a trial court acts within its discretion "in denying a motion for new trial *nisi additur* where there is evidence in the record to support the jury's verdict").

5. The cumulative error doctrine, if it applies in civil cases, is inapplicable in this case because Lynch failed to prove the court erred in any respect. *See State v. Johnson*, 334 S.C. 78, 93, 512 S.E.2d 795, 803 (1999) (explaining the cumulative error doctrine applies when "a combination of errors that are insignificant by themselves have the effect of preventing a party from receiving a fair trial"); *State v. Nicholson*, 366 S.C. 568, 581, 623 S.E.2d 100, 106 (Ct.App.2005) (refusing to apply the doctrine because "the trial [court] did not err in any of the particulars alleged in this appeal").

## IV. Conclusion

We affirm the trial court's denial of Lynch's new trial motion because (1) the foreperson's affidavit was inadmissible under Rule 606(b) and thus no evidentiary basis existed to prove juror misconduct during deliberations; and (2) there is evidence to support the trial court's finding that no intentional concealment occurred during voir dire. As to the parties' additional issues on appeal, we affirm.

**AFFIRMED.**

KONDUROS, J., concurs.

PIEPER, J., dissenting.

I respectfully dissent because I believe sufficient information was presented to the trial court to warrant an evidentiary hearing to allow the parties to further develop the allegations of juror misconduct presented in the post-trial affidavits. *See McCoy v. State*, 401 S.C. 363, 371, 737 S.E.2d 623, 628 (2013) ("[E]valuating the merits of a juror misconduct claim is a fact-intensive inquiry, which is most appropriately conducted after a hearing."); *State v. Bryant*, 354 S.C. 390, 395, 581 S.E.2d 157, 160 (2003) ("In cases where a juror's partiality is questioned after trial, it is appropriate to conduct a hearing in which the defendant has the opportunity to prove actual juror bias."). Accordingly, I would remand for an evidentiary hearing on the issues raised in Lynch's motion for a new trial based upon juror misconduct.