539 S.E.2d 67

**The STATE, Respondent,**

v.

**Larry COVINGTON, Appellant.**

**No. 3255.**

Court of Appeals of South Carolina.

Heard Sept. 12, 2000.
Decided Oct. 30, 2000.
Rehearing Denied Jan. 8, 2001.

158

John Delgado, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka and Senior Assistant Attorney General William Edgar Salter, III, all of Columbia; and Solicitor Jay E. Hodge, Jr., of Darlington, for respondent.

STILWELL, Judge:

Larry Covington seeks a new trial on two counts of murder and one count of assault and battery with intent to kill. His conviction on these charges led to two consecutive life sentences and a consecutive twenty-year sentence. Covington argues the trial court erred in denying his new trial motion alleging two jurors perjured themselves during voir dire and injected extraneous information into jury deliberation, affecting the verdict. We agree with the trial court that Covington failed to meet his burden of proving the alleged misconduct occurred and affirm.

## BACKGROUND

This case arises from the shooting deaths of Covington's estranged wife and her nineteen-year-old niece. Covington's mother-in-law was also shot, but survived and, along with another witness, identified Covington as the perpetrator. At his November 1993 trial, Covington offered an alibi and asserted the defense of mistaken identity. The jury, however, found him guilty as charged.

Several months after the verdict, juror Butler came to the office of Covington's trial counsel and told him some of the jurors knew Covington before the trial and imparted to the others prejudicial information about Covington and his violent past with his wife. Butler signed an affidavit in which she contended jurors Strong and Dismal shared their prior knowledge of Covington with the jury. The affidavit states Strong claimed he knew Covington and repeatedly told the other jurors during deliberations "that knowing Larry the way he did, it was just like him to do a killing like this." Dismal "totally agreed" with Strong and stated she knew Covington had battered his wife, had previously been under restraining orders to stay away from her, and had been arrested on a number of warrants for beating her.

After speaking with Butler, Covington's counsel contacted several other jurors. Juror Coates also gave an affidavit claiming most of the African American jurors had prior knowledge of Covington's marital problems and several maintained they knew he "had been bad and in trouble before."

On the basis of these two affidavits, Covington made a motion for a new trial in September 1994 after losing on direct appeal. The trial court denied the motion on the ground the affidavits were incompetent evidence to impeach the verdict. The supreme court reversed, concluding the affidavits were competent evidence and remanded for an evidentiary hearing to determine the merits of Covington's claims. *State v. Covington*, Op. No. 98–MO–011 (S.C. Sup.Ct. filed Feb. 9, 1998).

Upon remand, eleven of the jurors in Covington's case were reassembled over several days of hearings on the issue of the alleged misconduct. Each of the jurors present testified concerning the allegations.

Butler's testimony substantially matched her affidavit. Butler said she only changed her vote from not guilty to guilty because of Strong's intimidating presence and the information she learned about Covington's past which was not brought out at trial.

Coates testified it was apparent during deliberations that one or more of the jurors knew Covington. While she could not remember the names of the jurors she alleged engaged in such misconduct, Coates specifically recalled two jurors of the same race and sex as Strong and Dismal. As to what may have been said by Strong or others, Coates remembered "they ... were discussing, you know, different things that had happened with [Covington]" including that he and his wife had problems and that he had beaten her. Coates testified she had been repeatedly followed and suspected someone was listening to her telephone conversations since the Covington trial. Additionally, she was frightened by a young man at work and said her car had been vandalized. She wondered if those events were related to the trial.

Juror Goins testified some jurors discussed Covington's temper and his history with his wife. Goins remembered telling the other jurors that such information had nothing to do with the case and they should concentrate on the evidence introduced at trial. He identified Strong as the juror who brought up the information and Dismal as the juror who agreed with Strong's statements. When asked whether he thought those jurors discussing Covington's past knew him

well, Goins responded, "Well, I reckon they were acquaintances."

Strong denied knowing Covington or relating to other jurors that he knew him. He also denied making the statements attributed to him during deliberations about Covington's past. Strong testified he could not recall any attempt by a juror to bring in outside information about Covington.

Like Strong, Dismal denied having any knowledge of Covington before the trial or sharing any outside information with the jury. She also did not remember Strong telling the other jurors about events which were not mentioned at trial. Dismal could not recall any juror indicating he or she knew Covington before the trial.

The remaining jurors testified they did not recall any reference during deliberations of events not testified to at trial. One of the jurors testified that restraining orders were discussed during deliberations, but that she could not recall whether this was brought out at trial. When questioned about the discussion of restraining orders, the jury foreman stated such information was revealed at trial either through witness testimony or through a comment by one of the attorneys.

The trial court discounted the affidavits and testimony of jurors alleging misconduct primarily because they failed to report it timely. Regarding Butler's testimony and affidavit, the trial court found her testimony inconsistent with the jury foreman on his "position" as to the alleged misconduct. The trial court was also concerned that although Butler claimed several jurors engaged in misconduct, she only named Strong and Dismal. Finally, the trial court noted that although Butler claimed she initially reported the misconduct in January 1994, her affidavit was dated October 13, 1994, many months thereafter.

As to Coates, the trial court found her testimony completely lacking in credibility. According to the trial court's order, Coates' demeanor, complaints about "a lot of strange things" happening to her since the trial, and failure to attend the final day of hearings, although expressly directed to do so, undermined her credibility with the court.

In reviewing Goins' testimony, the trial court found him less certain than Butler or Coates that misconduct had occurred. The trial court noted that Goins often qualified his answers with expressions such as "I think so" or "I reckon" in response to questions about whether some jurors seemed to know Covington or whether the jurors had discussed Covington's history with his estranged wife.

In contrast to the jurors who alleged misconduct, the trial court "was impressed with jurors Strong and Dismal as witnesses and [found] their testimony [was] credible." Specifically, the trial court cited their demeanor as witnesses, their consistent and adamant denials of knowing Covington or participating in any wrongdoing, and their candor in revealing the matters discussed during deliberations as evidence of their believability. Further, the trial court noted their claims were corroborated by the remaining jurors who remembered no discussion of extra-record information during deliberations.

The trial court did find that some of the jurors recalled a restraining order being mentioned, but the record did not reflect that this evidence was brought out at trial. However, the court attributed such a "memory" either to the defense investigators' post-trial questioning or an unsuccessful attempt by the State to introduce an arrest warrant charging the defendant with criminal domestic violence.[1] As such, the trial court determined that any recollection of a "restraining order" did not support Covington's position that extraneous information was provided to the jury. Finally, the trial court was persuaded by the lack of evidence that any of the jurors knew Covington before trial and failed to disclose that fact on voir dire.

In ruling on Covington's motion, the trial court noted that while South Carolina case law clearly places the burden on the defendant to prove allegations of juror misconduct, neither prior case law nor the supreme court's remand opinion identified the applicable burden of proof. The trial court found Covington not only failed to prove the alleged misconduct by clear and convincing evidence, but also failed to establish the allegations by a preponderance of the evidence.

---

1. The trial court found the arrest warrant inadmissible and issued a curative instruction.

## SCOPE OF REVIEW

Generally, the denial of a new trial motion will be disturbed only upon a showing of an abuse of discretion. *State v. Smith*, 316 S.C. 53, 55, 447 S.E.2d 175, 176 (1993). Where a new trial motion is based upon allegations that a juror gave misleading and incomplete answers on voir dire, the trial court's denial of that motion will be affirmed absent a prejudicial abuse of discretion. *State v. Kelly*, 331 S.C. 132, 145, 502 S.E.2d 99, 106 (1998). A denial of a new trial based on alleged jury misconduct is also reviewed for an abuse of discretion. *Knowlton v. Greenwood Indep. Sch. Dist.*, 957 F.2d 1172, 1177 (5th Cir.1992). We thus review the order on appeal to determine whether the trial court abused its discretion in denying Covington's motion.

## DISCUSSION

"In a criminal prosecution, the conduct of the jurors should be free from all extraneous or improper influences." *Kelly*, 331 S.C. at 141, 502 S.E.2d at 104; *see also State v. Salters*, 273 S.C. 501, 504, 257 S.E.2d 502, 504 (1979) ("A defendant in a criminal prosecution is constitutionally guaranteed a fair trial by an impartial jury; and, in order to fully safeguard this basic protection, it is required that the jury render its verdict free from outside influences." (citations omitted)). Where the defendant seeks a new trial on the ground of impropriety involving the jury, he is required to prove both the alleged misconduct and the resulting prejudice. *See State v. Grovenstein*, 335 S.C. 347, 351–52, 517 S.E.2d 216, 218 (1999); *Kelly*, 331 S.C. at 145–46, 502 S.E.2d at 106; *State v. Smith*, 338 S.C. 66, 72, 525 S.E.2d 263, 266 (Ct.App.1999) ("The general test for evaluating alleged juror misconduct is whether there in fact was misconduct and, if so, whether any harm resulted to the defendant as a consequence.").

Initially, the trial judge must make a factual determination as to whether juror misconduct has occurred. *Smith*, 338 S.C. at 71, 525 S.E.2d at 266 ("Misconduct of a juror is 'a fact to be determined by the trial judge from the circumstances' of each case." (citations omitted)); *see also State v. Aldret*, 333 S.C. 307, 315, 509 S.E.2d 811, 815 (1999) (holding where affidavits supporting juror misconduct are credible, the

trial court must conduct an evidentiary hearing to determine if misconduct occurred).

■ Only if the trial court finds a juror is guilty of misconduct must the judge determine whether the misconduct affected the verdict, warranting a new trial. *See Aldret,* 333 S.C. at 315–16, 509 S.E.2d at 815. As to allegations that a juror intentionally provided misleading, false, or incomplete answers on voir dire, a new trial is only necessary where the purposefully concealed information would have been a material factor in the party's use of peremptory challenges or would have supported a challenge for cause. *Kelly,* 331 S.C. at 146, 502 S.E.2d at 106.

On the issue of whether the introduction of extraneous information during jury deliberations warrants a new trial, the supreme court has stated:

> The trial court has broad discretion in assessing allegations of juror misconduct. Relevant factors to be considered in determining whether outside influences have affected the jury are the number of jurors exposed, the weight of the evidence properly before the jury, and the likelihood that curative measures were effective in reducing the prejudice. Generally, the determination of whether extraneous material received by a juror during the course of the trial is prejudicial is a matter for determination by the trial court.

*Id.* at 141–42, 502 S.E.2d at 104.

■ We agree with the trial court that Covington failed to prove the alleged misconduct occurred, either on voir dire or in jury deliberations. The trial court made a specific finding that the requisite burden of proof of juror misconduct would be by a clear and convincing standard. Alternatively, the trial court found that Covington failed to establish his allegations even under the lesser preponderance of the evidence standard. Because we agree with the trial court that under either standard Covington has not proved juror misconduct, we find it unnecessary, in this case, to determine the applicable standard of proof necessary to establish juror misconduct.

We believe the trial judge was in the best position to determine the credibility of the testifying jurors and other evidence because he conducted the original voir dire, tried the

case, and considered the evidence of misconduct. Although three jurors testified to varying degrees about the alleged misconduct, the majority denied or could not recall any misconduct. Given the conflicting evidence, we defer to the sound judgment of the trial judge in resolving a disputed factual issue and, therefore, find no abuse of discretion on his part. *See id.* at 142, 502 S.E.2d at 104 ("The trial judge is in the best position to determine the credibility of the jurors; therefore, this Court should grant him broad deference on this issue."); *see also Scott v. State,* 163 Tex.Crim. 15, 288 S.W.2d 796 (1956) (finding no abuse of discretion by the trial court in denying a new trial motion after discounting the statements of two jurors alleging misconduct as against the contrary statements of most of the other jurors); *McClure v. State,* 100 Tex.Crim. 464, 273 S.W. 604 (1925) (holding that when the evidence of juror misconduct conflicted, the trial court's denial of a new trial motion was proper absent an abuse of discretion showing). Since Covington failed to prove juror misconduct by either clear and convincing evidence or preponderance of the evidence, we concur in the trial judge's reasoning that it was unnecessary for him to address whether there was any prejudice resulting from the alleged misconduct.

For the reasons discussed above, the trial court's order denying Covington's motion for a new trial is

**AFFIRMED.**

HOWARD and SHULER, JJ., concur.