597 S.E.2d 845

**The STATE, Respondent,**

v.

**Joshua Adam GALBREATH, Appellant.**

**No. 3812.**

Court of Appeals of South Carolina.

Heard April 7, 2004.

Decided June 1, 2004.

John Dennis Delgado and Kathrine Haggard Hudgins, both of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Assistant Attorney General David Spencer, all of Columbia; and Solicitor Druanne Dykes White, of Anderson, for Respondent.

HEARN, C.J.:

After a jury convicted Joshua Galbreath of assault and battery of a high and aggravated nature (ABHAN), defense counsel filed a motion for a new trial alleging three instances

of juror misconduct. The trial judge held a hearing and considered affidavits, but refused to reconvene the jury for questioning and denied the new trial motion. We affirm.

## FACTS

A group of friends, including Lee Rogers, were celebrating Quicha Tannery's birthday at her house. During the course of the evening, Joshua Galbreath and his friends visited the party, and almost immediately upon Galbreath's arrival, a fight broke out between his group of friends and some of the individuals who were previously at the party.

Rogers testified that during the fight, he heard Galbreath tell a friend to go get the gun. Rogers stated that he went to help carry one of his injured friends back into Tannery's house when he turned and saw Galbreath hit him with a shotgun. Three other witnesses also testified that Galbreath hit Rogers with a shotgun.

Galbreath denied ever hitting Rogers with the shotgun, but he admitted that one of his friends had taken out a gun. Galbreath contended he took the gun away from his friend with the intent of returning it to the car. However, the police arrived before he could return the gun to the car, so instead, Galbreath threw it into some bushes

The jury found Galbreath guilty of ABHAN, and the trial judge sentenced him to ten years, suspended on five years service and five years probation. Sometime after the trial, defense counsel contacted several jurors and became aware of allegations of impropriety involving the jury. Galbreath then filed a motion for a new trial, which included affidavits alleging juror misconduct. Galbreath contended that (1) Juror Jones was improperly influenced by an extra-judicial statement he heard while at lunch, (2) Juror Stone withheld information during voir dire, and (3) Juror Owens supplied improper sentencing information to the jury during deliberations. The trial judge heard arguments on the motion for a new trial but refused to reconvene the jury for questioning. The judge explained he was denying the motion even accepting the allegations as true. Galbreath appeals.

## STANDARD OF REVIEW

On appeal, the denial of a new trial motion will be disturbed only upon a showing of an abuse of discretion. *State v. Kelly,* 331 S.C. 132, 145, 502 S.E.2d 99, 106 (1998). A denial of a new trial based on alleged jury misconduct is reviewed for an abuse of discretion. *State v. Covington,* 343 S.C. 157, 163, 539 S.E.2d 67, 69–70 (Ct.App.2000). Likewise, where the motion is based upon allegations that a juror gave misleading or incomplete answers during voir dire, the trial court's denial of that motion will be affirmed absent a prejudicial abuse of discretion. *Id.*

## LAW/ANALYSIS

### I.  Comments Overheard by Juror Jones

■  Galbreath first alleges that Juror Jones was improperly influenced by extra-judicial comments he heard during lunch. Specifically, Galbreath points to another juror's affidavit, which alleged:

> After the deliberations but before we left the jury room, a juror named Mark Jones stated that he went to a Mexican restaurant during the trial and the Defendant and his family and friends were there eating also. He stated that he heard people at the Defendant's table making threats and heard one of the men say that he would cut that bitch's throat.

We agree with the trial judge that this allegation, even if true, does not entitle Galbreath to a new trial.

■  When an allegation is made that extraneous information may have improperly influenced jurors, the [r]elevant factors to be considered ... are the number of jurors exposed, the weight of the evidence properly before the jury, and the likelihood that curative measures were effective in reducing the prejudice. *Kelly,* 331 S.C. at 141–42, 502 S.E.2d at 104 (1998). Further, where a defendant seeks a new trial on the basis of juror misconduct, he is required to prove both the alleged misconduct and the resulting prejudice. *Covington,* 343 S.C. at 163, 539 S.E.2d at 70.

In this case, Juror Jones was the only juror who might have considered the extraneous information during deliberations because the affidavit states that Jones did not mention the

information to the others until after deliberations. As for the weight of evidence before the jury, the State presented four witnesses who testified that Galbreath hit Rogers in the head with a shotgun. Furthermore, although the trial judge was not able to specifically address the overheard conversation, he did instruct the jury that: Under the oath you took, you swore to try the case based only and solely on the testimony, evidence and law presented and heard in this courtroom. It is your duty to lay aside all bias or prejudice or sympathy you may have in reaching your verdict. Considering these factors, we find the trial judge did not abuse his discretion in ruling that the comments Juror Jones overheard had very little prejudicial effect or influence on the jury's verdict.

Additionally, the statement Jones overheard was not made by Galbreath but by an individual who was dining with Galbreath, thereby lessening any possible prejudicial effect. Generally, the determination of whether extraneous information received by a juror during the course of the trial is prejudicial is a matter for determination by the trial judge, and we see no reason to upset the judge's finding that there was no prejudice. *Kelly*, 331 S.C. at 142, 502 S.E.2d at 104.

## II. Juror Stone's Relationship with the Stinnett Family

Galbreath also argues that another juror, Juror Stone, intentionally withheld information during voir dire, and in support of this argument, Galbreath submitted various affidavits about a relationship between Juror Stone and the Stinnett family. Anna Stinnett was a victim and witness in this case, and Galbreath alleges that Stone knew Stinnett's mother. Galbreath also alleges that Stone's brother-in-law and nephew rent a pasture and house respectively from an undisclosed member of the Stinnett family. Even assuming these allegations are true, we find Juror Stone did not intentionally withhold any information about her relationship with the Stinnett family from the trial court.

A new trial is only required when a juror intentionally conceals information during voir dire. *State v. Woods*, 345 S.C. 583, 588, 550 S.E.2d 282, 284 (2001). Galbreath frames Stone's lack of disclosure as intentional and argues that the disclosure would have induced him to use a peremptory strike

against her. However, during voir dire, the trial judge only asked if [a]ny member of the jury panel [is a] close personal friend, [or] business associate of any of the potential witnesses? Because none of the information in the affidavits indicates Juror Stone had a close personal friendship or business relationship with any of the witnesses, there is no evidence that she intentionally concealed any information from the trial judge.[1]

Galbreath also argues Stone was not forthright with the court because she did not respond when the trial judge asked whether any member of the jury panel knew of any reason why he or she could not give both the State of South Carolina and the defendant a fair and impartial trial. There is no suggestion in the affidavits that Juror Stone viewed herself as an incapable or uncomfortable juror. In fact, Stone's decision not to respond to this question suggests that she felt she could be an impartial and fair juror.[2] Furthermore, even if this court found some type of juror misconduct, Galbreath has made no showing of prejudice, especially considering he was acquitted for pointing and presenting a firearm at Anna Stinnett. See Covington, 343 S.C. at 163, 539 S.E.2d at 70 (requiring a showing of prejudice when a defendant seeks a new trial on the basis of juror misconduct).

### III. Incorrect Sentencing Information from Juror Owens

█ Defense counsel also provided affidavits from Juror Owens and Juror Ellenburg, which state that during the course of deliberations, the subject of punishment arose after the jury had decided that Galbreath was not guilty of assault and battery with intent to kill but before it had made a

---

1.  In *Kelly*, a capital case, a juror had once attended a death penalty rally and did not disclose this information when he was asked about his position on the death penalty. The court found no misconduct and stated that: Juror P was not specifically asked if he had participated in death penalty activities in the past. 331 S.C. at 146, 502 S.E.2d at 107.

2.  We hold that intentional concealment occurs when the question presented to the jury on voir dire is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable. *Woods*, 345 S.C. at 588, 550 S.E.2d at 284.

decision on the lesser included charges of ABHAN and simple assault and battery. At that point, Juror Owens explained that, based on personal experience, Galbreath would receive a fine but no jail time if he was convicted of ABHAN. Jurors Owen and Ellenburg both allege that if they had known Galbreath was facing prison time, they would have gone through the elements of the charges again and would have found him guilty only of simple assault and battery. Galbreath argues this sentencing information, like the comments Juror Jones overheard while he was at lunch, constitutes extraneous information or influence and urges this court to remand the case for a new trial. We disagree and find that the erroneous sentencing information resulted from *internal* jury misconduct, and because the misconduct did not violate Galbreath's due process rights, we find no error in the trial judge's denial of Galbreath's motion for a new trial.

Traditionally, a juror's testimony was not admissible to prove either his own misconduct or the misconduct of other jurors. *State v. Aldret,* 333 S.C. 307, 310, 509 S.E.2d 811, 812 (1999). However, Rule 606(b), SCRE altered this common law rule, and now, juror testimony regarding external prejudical information or improper outside influence is allowed. The rule was further altered by *State v. Hunter,* 320 S.C. 85, 463 S.E.2d 314 (1995), which dealt with allegations of racial prejudice by the jury. *Hunter* carved out an exception to the rule against juror testimony regarding internal jury deliberations, holding that juror testimony is competent in cases involving internal misconduct where necessary to ensure fundamental fairness. *Id.,* 320 S.C. at 88, 463 S.E.2d at 316.

External influence on a jury involves situations where jurors receive information during deliberations from some outside source. *See State v. Robinson,* 336 N.C. 78, 443 S.E.2d 306, 329 (1994) (defining external influences as information dealing with the defendant or the case which is being tried, which information reaches a juror without being introduced in evidence, but excluding information which a juror has gained in his experience). For example, in *State v. Harris,* 340 S.C. 59, 530 S.E.2d 626 (2000), a juror consulted Black's Law Dictionary for the definitions of malice aforethought and manslaughter during the course of deliberations. The supreme court weighed the three factors our courts use to

determine whether outside influences have affected the jury, and found that the lone juror's use of the dictionary, which merely reiterated definitions the trial court had given, did not affect the verdict. Likewise, in *State v. Kelly,* 331 S.C. 132, 502 S.E.2d 99 (1998), the supreme court determined that no new trial was necessary where a religious pamphlet about God's view of the death penalty circulated in the jury room because there was no evidence the extraneous information affected the jury's verdict.

Here, there is no allegation that the incorrect sentencing information came from some extraneous source. Rather, it was given to the jury from a fellow juror, who had acquired the information from her own personal experience. *See State v. Robinson,* 443 S.E.2d at 329 (defining internal influences as information coming from the jurors themselves). Because the affidavits of Juror Owens and Juror Ellenburg concern internal jury deliberations, they can only be reviewed if the allegations suggest that fundamental fairness, i.e. due process was denied. *Hunter,* 320 S.C. at 88, 463 S.E.2d at 316. Thus, for this court to find that a new trial is warranted, we would have to find that Galbreath was denied due process because jurors mistakenly believed he would not serve jail time if convicted of ABHAN.

In South Carolina determining guilt or innocence is the duty of the jury, whereas sentencing is the duty of the court. A number of courts in other jurisdictions have dealt with allegations that jurors were misinformed about possible sentences, and in none of those cases did this misinformation result in a court overturning a verdict. *See, e.g., Fullwood v. Lee,* 290 F.3d 663, 684 (4th Cir.2002) (holding that when a juror informs the jury about his understanding that a capital murder defendant would serve less than life if sentenced to life, such information relates to the jury's internal discussions and may not be used to upend a verdict); *Dobbs v. Zant,* 963 F.2d 1403, 1411 (11th Cir.1991), *rev'd on other grounds,* 506 U.S. 357, 113 S.Ct. 835, 122 L.Ed.2d 103 (1993) (barring juror testimony that jurors voted to impose death penalty under mistaken impression that defendant would not be executed); *Robinson,* 443 S.E.2d at 329–330 (holding that allegations jurors considered defendant's possibility of parole are allegations of internal influences and will not be considered); *Lewis v. State,* 249

Ga.App. 812, 549 S.E.2d 732, 736 (2001) (refusing to hear testimony from jurors that they believed defendant would receive probation if convicted). While none of these cases specifically identified and analyzed the issue as one of fundamental fairness, the results suggest that fundamental fairness is not automatically violated when a jury considers and is mistaken about sentencing implications.

Although a jury's consideration of sentencing consequences may, in some situations, affect the fundamental fairness of a trial, we do not believe the allegations in this case support such a finding. Here, the jurors' affidavits assert that they would have reviewed the elements of ABHAN *again* if they had known Galbreath would be incarcerated. This allegation makes clear that, prior to rendering its verdict, the jury determined Galbreath's actions met the elements of ABHAN. Thus, there is no evidence Galbreath's due process rights were violated.

Accordingly, we affirm trial court's denial of a motion for a new trial.

**AFFIRMED.**

ANDERSON and BEATTY, JJ., concur.