# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

William Coaxum, Sr., Respondent.

Appellate Case No. 2012-206607

_____

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

_____

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

_____

Opinion No. 27452
Heard May 8, 2014 – Filed October 8, 2014

_____

## REVERSED

_____

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Salley W. Elliott, and Assistant
Attorney General Mark Reynolds Farthing, all of
Columbia, for Petitioner.

Appellate Defender David Alexander, of Columbia, for
Respondent.

_____

**CHIEF JUSTICE TOAL:**    The State appeals the court of appeals' decision to reverse the convictions of William Coaxum, Sr. (Respondent), who was found guilty of armed robbery and possession of a firearm during the commission of a violent crime. *See State v. Coaxum*, Op. No. 2011-UP-496 (S.C. Ct. App. filed Nov. 7, 2011). The court of appeals found reversible error in the trial court's decision to remedy a juror's unintentional nondisclosure during voir dire by replacing the juror in the middle of Respondent's trial. We reverse.

## FACTS/PROCEDURAL BACKGROUND

On November 27, 2007, around 11:00 p.m., two armed men robbed a Pizza Hut located in North Charleston, South Carolina. The robbers escaped in an "orange hatchback-type car." Within minutes, the police saw a vehicle matching this description in the same general vicinity of the Pizza Hut and attempted to conduct an investigatory stop. The driver of the vehicle, Respondent, refused to pull over, and a high-speed pursuit ensued.

Within two miles of the start of the chase, Respondent lost control of the vehicle and crashed into a fire hydrant, which caused a water line to rupture. Respondent and his passenger attempted to flee on foot. However, the police car hydroplaned in the water spilling from the broken fire hydrant and collided with Respondent. The police arrested Respondent at the scene of the crash, and their search of his car and person revealed a sawed-off shotgun and over $1,000 in cash.[1]

Prior to Respondent's trial, the trial court conducted voir dire of the prospective jurors. Specifically, the court asked: "Are there any members of the jury panel related [by] blood or marriage, socially or casually connected with [Respondent], or that have any business dealings, any connection whatsoever?" None of the prospective jurors responded. After the judge asked the jury pool several other questions, the parties selected twelve jurors and one alternate juror to serve as jurors during Respondent's trial, including Juror #7.[2]

---

[1] Shortly after the passenger was arrested, he gave a written statement to police describing the Pizza Hut robbery in detail and naming Respondent as his co-conspirator.

[2] The parties selected Juror #7 as the second person to be seated on the jury. Prior to Juror #7's selection, the State had exercised two of its five available peremptory strikes; however, after Juror #7's selection, the State did not exercise any further peremptory strikes. Neither party exercised a peremptory strike during the

At trial, after the State presented the first four of its eight witnesses, the judge received a note from the jury foreperson indicating that Juror #7 recognized one of Respondent's family members sitting in the courtroom. The judge conducted an off-the-record discussion with Juror #7 to determine the nature of her relationship with the family member and whether she could remain impartial during the trial. He then summarized his discussion with Juror #7 on the record.

The judge reported that Juror #7 and Respondent's family member were co-workers, and that the family member previously claimed that Juror #7 was a "distant cousin."[3] Juror #7 indicated that, once she recognized Respondent's family member, she felt uncomfortable not disclosing the working and family relationship between the two. She told the judge that the working and family relationships would not affect her decision in the trial.

The solicitor requested Juror #7 be removed from the jury, arguing that although Juror #7's initial nondisclosure during voir dire was unintentional,[4] "these types of relationships . . . [,] ultimately she may not be able to put it out of her mind." The solicitor further indicated that, had he known of the relationship between Juror #7 and Respondent, no matter how tenuous, he would have exercised one of the State's three remaining peremptory challenges against her.[5]

---

selection of the alternate juror.

[3] The Record is unclear whether Juror #7 truly was related to Respondent's family member, to both the family member and Respondent, or to neither. Juror #7 was "not sure" whether she was a blood relative to Respondent's family. Presumably, her uncertainty is the reason she failed to answer during voir dire when the trial court asked the prospective jurors whether they were "related [by] blood or marriage, socially or casually connected with [Respondent]."

[4] "Unintentional concealment . . . occurs where the question posed [during voir dire] is ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances." *State v. Woods*, 345 S.C. 583, 588, 550 S.E.2d 282, 284 (2001).

[5] The solicitor detailed his strategy for exercising peremptory strikes, stating that he specifically looked for ties to the community, longstanding employment history, and ties to the defendant or a key witness.

In response, Respondent's counsel argued that alternate jurors do not pay as much attention to the evidence and testimony as the original twelve jurors, despite the court's warnings to the contrary. Therefore, Respondent's counsel argued for a public policy against replacing jurors in the middle of a trial.

After conducting a lengthy inquiry, the trial court found that the alleged connection between Juror #7 and Respondent would have been a material factor in the State's exercise of its peremptory challenges. The court did not view Juror #7's connection with Respondent and his family as a basis for a challenge for cause. However, the court ruled that the connection would have been a legitimate basis for the State's exercise of its peremptory strikes, and that the State would have struck Juror #7 had she disclosed the connection. Therefore, the trial court excused Juror #7 from the jury and replaced her with the alternate juror. The State then called its remaining witnesses, and the jury ultimately convicted Respondent of armed robbery and possession of a firearm during the commission of a violent crime.

The court of appeals reversed Respondent's convictions and remanded the case for retrial, concluding that a trial court may not "automatically" remove a juror for an unintentional failure to disclose requested personal information during voir dire. Further, the court of appeals held that it was an abuse of discretion for the trial court to have removed Juror #7 because, in essence, a trial court may remove a juror mid-trial only if the juror has *intentionally* failed to disclose. This appeal followed.

## ISSUE

Whether the trial court abused its discretion in removing Juror #7 for her unintentional failure to disclose her relationship with Respondent's family member during voir dire?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only" and is "bound by the trial court's factual findings unless they are clearly erroneous." *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001) (citation omitted). "In order to receive a mistrial, the defendant must show error and resulting prejudice." *State v. Kelly*, 331 S.C. 132, 142, 502 S.E.2d 99, 104 (1998); *see also State v. Galbreath*, 359 S.C. 398, 402, 597 S.E.2d 845, 847 (Ct. App. 2004) (requiring the defendant to show a prejudicial abuse of discretion (citing *State v. Covington*, 343 S.C. 157, 163, 539 S.E.2d 67, 69–70 (Ct. App. 2000))).

ANALYSIS

"All criminal defendants have the right to a trial by an impartial jury." *State v. Woods*, 345 S.C. 583, 587, 550 S.E.2d 282, 284 (2001) (citing U.S. Const. amends. VI and XIV). To that end, the jury must render its verdict free from outside influences of all kinds. *Kelly*, 331 S.C. at 141, 502 S.E.2d at 105 (quoting *State v. Cameron*, 311 S.C. 204, 207, 428 S.E.2d 10, 12 (Ct. App. 1993)). To protect both parties' right to an impartial jury, the trial court must conduct voir dire of the prospective jurors to determinate whether the jurors are aware of any bias or prejudice against a party, as well as to "elicit such facts as will enable [the parties] intelligently to exercise their right of peremptory challenge." *Woods*, 345 S.C. at 587, 550 S.E.2d at 284.

"[T]rial judges and attorneys cannot fulfill their duty to screen out biased jurors without accurate information." *Kelly*, 331 S.C. at 145, 502 S.E.2d at 106. Should jurors give false or misleading answers during voir dire, the parties may mistakenly seat a juror who could have been excused by the court, challenged for cause by counsel, or stricken through the exercise of a peremptory challenge. *State v. Gulledge*, 277 S.C. 368, 371, 287 S.E.2d 488, 490 (1982).

In the event of such juror misconduct, the trial court must inquire into whether the withheld information affects the jury's impartiality. *Kelly*, 331 S.C. at 141, 402 S.E.2d at 104. However, the court should not grant a mistrial based on a juror's concealment of information "unless absolutely necessary." *Id.* at 142, 502 S.E.2d at 104. "Instead, the trial judge should exhaust other methods to cure possible prejudice before aborting a trial." *Id.* (citing *State v. Wasson*, 299 S.C. 508, 386 S.E.2d 255 (1989)); *see also State v. Williams*, 321 S.C. 455, 459–60, 469 S.E.2d 49, 52 (1996) (affirming the trial court's decision to seat an alternate juror midtrial after another juror's impartiality came into question); *State v. McDaniel*, 275 S.C. 222, 224, 268 S.E.2d 585, 586 (1980) (same).

We have previously held that a new trial is required "*only* when the court finds the juror intentionally concealed the information, and that the information concealed would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges." *Woods*, 345 S.C. at 587, 550 S.E.2d at 284 (emphasis added). In the face of a juror's intentional nondisclosure of pertinent information during voir dire, "it may be inferred, nothing to the contrary appearing, that the juror is not impartial." *Id.* at 587–88, 550 S.E.2d at 284. Thus, should the trial court fail to replace such a juror or grant a mistrial, the party need only demonstrate the error of the trial court's decision by

proving the concealment was, in fact, intentional; however, the party need not show prejudice, as the bias against the moving party is inferred, and prejudice from the moving party's inability to strike the juror is apparent. *Id.* at 589, 550 S.E.2d at 285.

In contrast, if a juror's nondisclosure is unintentional, the trial court may exercise its discretion in determining whether to proceed with the trial with the jury as is, replace the juror with an alternate, or declare a mistrial.[6] *Cf. id.* ("'Only where a juror's intentional nondisclosure does not involve a material issue, or where the nondisclosure is *unintentional*, should the trial court inquire into prejudice.'" (quoting *Doyle v. Kennedy Heating & Serv., Inc.*, 33 S.W.3d 199, 201 (Mo. Ct. App. 2000))). Paralleling the inquiry in cases of intentional concealment, the trial court in the unintentional concealment situation must determine whether the information concealed would have supported a challenge for cause or would have been a material factor in a party's exercise of its peremptory challenges. *State v. Stone*, 350 S.C. 442, 448, 567 S.E.2d 244, 247–48 (2002) (citing *Woods*, 345 S.C. at 587–88, 550 S.E.2d at 284).

However, "where the failure to disclose is innocent, no inference of bias can be drawn." *Woods*, 345 S.C. at 589, 550 S.E.2d at 285. Accordingly, the moving party has a heightened burden to show that the concealed information indicates the juror is potentially biased, and that the concealed information would have been a material factor in the party's exercise of its peremptory challenges. In other words, the moving party must show that it was prejudiced by the concealment because it was unable to strike a potential—and material—source of bias.

---

[6] *See, e.g.*, *State v. Sparkman*, 358 S.C. 491, 495–98, 596 S.E.2d 375, 377–78 (2004) (affirming the trial court's refusal to replace a juror when, after the verdict but before the sentencing hearing, the defendant became aware of the juror's unintentional nondisclosure during voir dire); *State v. Stone*, 350 S.C. 442, 448–49, 567 S.E.2d 244, 247–48 (2002) (finding the trial court abused its discretion in removing a juror during the punishment phase of a death penalty trial because of the juror's unintentional nondisclosure during voir dire); *Kelly*, 331 S.C. at 139–44 (affirming the trial court's decision to remove a juror midtrial and replace the juror with an alternate because the juror appeared to be biased); *Williams*, 321 S.C. at 459–60, 469 S.E.2d at 52 (same); *McDaniel*, 275 S.C. at 224, 268 S.E.2d at 586 (same).

Our previous decisions have not focused on the need for this prejudice analysis,[7] and the court of appeals has periodically omitted it when considering cases involving a juror's unintentional nondisclosure during voir dire. For example, the court of appeals has previously read *Stone* and its progeny to essentially eliminate the trial court's ability to remove a juror for an unintentional concealment, no matter how relevant the information disclosed would have been to exercising a peremptory strike:

> When a party contends a juror should be removed for failure to disclose information during voir dire, *Stone* requires the trial judge to consider two criteria from *Woods*. If the judge finds both of the *Woods* criteria exist, the judge must remove the juror. **However, if either of the criteria is absent, the judge may not remove the juror on that basis**. Here, we need only look to the absence of the first criterion to affirm. As in *Stone*, this juror's failure to disclose the information was innocent. Thus, the removal of the juror would have been error.

*State v. Burgess*, 391 S.C. 15, 19–20, 703 S.E.2d 512, 514–15 (Ct. App. 2010) (bold emphasis added) (citations omitted).

The analysis in *Burgess* is the same analysis used by the court of appeals in Respondent's case; however, we find this analysis to be an improper reading of our prior case law, as it does not consider how material the information would have been to the parties in exercising their peremptory challenges. While the information concealed in *Burgess* may not have been material—and thus the court

---

[7] Nonetheless, we have in fact conducted such an analysis. *See, e.g.*, *Sparkman*, 358 S.C. at 497, 596 S.E.2d at 378 ("Because [the juror's] concealment was unintentional our inquiry is over, however, we fail to see how [the defendant] was prejudiced given that the trial judge questioned the jury after the verdict."); *Stone*, 350 S.C. at 448, 567 S.E.2d at 247–48 (finding that a juror's "scant acquaintance" with the defendant's family would not have prejudiced the State had the juror remained on the jury); *Kelly*, 331 S.C. at 142, 502 S.E.2d at 104 ("While it was improper for Juror O to possess this pamphlet, in our opinion, appellant failed to show prejudice."); *Williams*, 321 S.C. at 460, 469 S.E.2d at 52 ("[W]e discern no prejudice to [the defendant] from the seating of the alternate juror here."); *McDaniel*, 275 S.C. at 224, 268 S.E.2d at 586 ("Moreover, appellant has failed to establish in what manner this procedure prejudiced him.").

of appeals may have reached the correct result in that case—it is too broad to say that, in all cases, when the concealment is unintentional, it is automatically immaterial.

Moreover, as we have previously stated, "'a new trial is *required* only when the court finds the juror *intentionally* concealed the information . . . .'" *Stone*, 350 S.C. at 448, 567 S.E.2d at 247 (emphasis added) (quoting *Woods*, 345 S.C. at 587, 550 S.E.2d at 284). Here, there is no allegation that Juror #7's failure to disclose was intentional. While the trial court likely would have been justified in refusing to excuse Juror #7 from the jury, its decision to remove her is not an abuse of discretion given the thorough inquiry it conducted into the solicitor's strategy in seating or striking prospective jurors. *Cf. Kelly*, 331 S.C. at 142, 502 S.E.2d at 104 ("A mistrial should not be granted unless absolutely necessary."); *McDaniel*, 275 S.C. at 224, 268 S.E.2d at 586 ("[T]he procedure employed by the trial court [in replacing a juror midtrial and impaneling an alternate], however irregular, was not sufficient to deprive appellant of his right to a jury trial. There is no right to be tried by a jury composed of particular individuals. The alternate juror had been approved by both sides at the inception of the trial, and there is no showing that appellant withdrew that approval at the time of substitution. Moreover, appellant has failed to establish in what manner this procedure prejudiced him." (citations omitted)).

As stated, *supra*, to receive a new trial, the defendant must show a prejudicial abuse of discretion. *Galbreath*, 359 S.C. at 402, 597 S.E.2d at 847 (citing *Covington*, 343 S.C. at 163, 539 S.E.2d at 69–70). As there is no question the jury was impartial after Juror #7's removal, Respondent did not meet his burden, and therefore is not entitled to a new trial. Accordingly, we reverse the court of appeals decision reversing Respondent's convictions.

## CONCLUSION

For the foregoing reasons, the court of appeals decision is

**REVERSED**.

**PLEICONES, KITTREDGE, HEARN, JJ., and Acting Justice James E. Moore, concur.**