**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Devin Zachary Elijah Ruttle, Appellant.

Appellate Case No. 2019-001570

---

Appeal From Spartanburg County
J. Derham Cole, Circuit Court Judge

---

Unpublished Opinion No. 2024-UP-398
Heard June 5, 2024 – Filed November 27, 2024

---

**AFFIRMED**

---

Christopher Todd Brumback and Spencer Davis Langley, both of Brumback & Langley, LLC, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, and Senior Assistant Deputy Attorney General Melody Jane Brown, all of Columbia; and Solicitor Barry Joe Barnette, of Spartanburg, all for Respondent.

---

**PER CURIAM:** Devin Zachary Elijah Ruttle was convicted of murder and the unlawful carrying of a handgun. On appeal, Ruttle argues (1) the trial court erred in denying his motion for a new trial by concluding juror number 92, Nysha Jeffries, did not give false or misleading answers during voir dire; (2) the trial court's denial of immunity under the South Carolina Protection of Persons and Property Act (PPPA)[1] was improper; and (3) the trial court committed reversible error by providing both an implied malice and a self-defense jury instruction. We affirm.

1. The trial court did not abuse its discretion by concluding Jeffries did not give false or misleading answers during voir dire and by denying Ruttle's motion for a new trial on this basis. *See State v. Bell*, 374 S.C. 136, 147, 646 S.E.2d 888, 894 (Ct. App. 2007) (determining a court's choice of whether or not to dismiss a juror will not be reversed absent an abuse of discretion); *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016) ("An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support."); *State v. Douglas*, 411 S.C. 307, 316, 768 S.E.2d 232, 238 (Ct. App. 2014) ("[T]he abuse of discretion standard of review does not allow this court to reweigh the evidence or second-guess the trial court's assessment of witness credibility."); *State v. Woods*, 345 S.C. 583, 587, 550 S.E.2d 282, 284 (2001) ("All criminal defendants have the right to a trial by an impartial jury."), *overruled in part on other grounds by State v. Rowell*, 444 S.C. 109, 115, 906 S.E.2d 554, 557 (2024); *State v. Coaxum*, 410 S.C. 320, 327, 764 S.E.2d 242, 245 (2014) ("To protect both parties' right to an impartial jury, the trial court must conduct voir dire of the prospective jurors to determinate whether the jurors are aware of any bias or prejudice against a party, as well as to 'elicit such facts as will enable [the parties] intelligently to exercise their right of peremptory challenge.'" (alteration in original) (quoting *Woods*, 345 S.C. at 587, 550 S.E.2d at 284)), *overruled in part on other grounds by State v. Rowell*, 444 S.C. 109, 115, 906 S.E.2d 554, 557 (2024); *Woods*, 345 S.C. at 590, 550 S.E.2d at 285 ("A juror should be disqualified by the court if it appears to the court the juror is not indifferent in the case. The decision to strike a juror for cause is within the sound discretion of the trial [court].."); *Coaxum*, 410 S.C. at 327, 764 S.E.2d at 245 ("Should jurors give false or misleading answers during voir dire, the parties may mistakenly seat a juror who could have been excused by the court, challenged for cause by counsel, or stricken through the exercise of a peremptory challenge."); *id.* ("In the event of such juror misconduct, the trial court must inquire into whether the withheld information affects the jury's impartiality. . . . '[T]he trial [court]

---

[1] S.C. Code Ann. §§ 16-11-410 to -450 (2016).

should exhaust other methods to cure possible prejudice before aborting a trial.'" (quoting *State v. Kelly*, 331 S.C. 132, 141-42, 502 S.E.2d 99, 104 (1998))).[2]

During voir dire, the trial court instructed the prospective jurors to notify the court if any juror or an immediate family member was the victim of a violent crime;[3] if any juror or his or her immediate family attend or had ever attended New Life Deliverance Worship Center (the Church); or if a juror has ". . . any connection by blood or marriage . . . work, school,[4] or church" or otherwise "met[,] . . . socialize with . . . or know" Ruttle or his father "in any fashion whatsoever."[5]  In his motion for a new trial, Ruttle alleged that (1) her grandfather was the victim of a violent crime, (2) she had previously attended the Church, and (3) she knew Ruttle and or his father from her past attendance at the Church.[6]

Jeffries did not conceal that her grandfather was the victim of a violent crime when asked whether she or an immediate family member was the victim of a violent crime.  The trial court defined an immediate family member as "a parent, spouse, child, or sibling."  This definition did not include grandfather, so Jeffries concealed no information when she failed to respond to the question.

As to the allegation that Jeffries attended the Church and as a result knew Ruttle or his father, Ruttle presented evidence at the hearing for his motion for a new trial that he asserted proved Jeffries had previously attended the Church.  This included videos from events at the Church between the years of 2011 and 2012 depicting a

---

[2] *Woods* and *Coaxum* were overruled in part by *Rowell*, which provides a new test for juror concealment.  The statements above from *Woods* and *Coaxum* are limited to trial rights, voir dire procedure, and juror concealment generally and are consistent with *Rowell*.

[3] The court identified "murder, manslaughter, armed robbery, burglary, criminal sexual conduct, domestic violence of a high and aggravated nature, common-law robbery, aggravated assault and battery[,] or any other similar type of an offense" as violent crimes.

[4] Ruttle alleged in his memorandum in support of his motion for new trial that Jeffries concealed she graduated from the same high school as Ruttle.  This issue was not appealed.

[5] Ruttle's father was the Church's acting minister at the time Jeffries was alleged to have attended.

[6] Neither Ruttle nor his father ever claimed to know Jeffries.  No one ever asserted Jeffries was a member of the Church.  Ruttle only mentioned Jeffries "looked familiar" to his attorneys during posttrial polling.

young Black female and testimony from former youth pastor, Travis Mims, that this individual had the same first name, "Nysha," as Jeffries. The trial court "was unable to determine with any degree of conviction whether the two females are the same person." The trial court did not abuse its discretion in making this finding. Ruttle argues that at the posttrial hearing, the trial court engaged in improper burden shifting by requiring him to produce Jeffries at the hearing or otherwise prove she was the same Nysha who attended the Church. However, *Ruttle* had the burden to provide evidence to support *his* motion. *See State v. Tucker*, 423 S.C. 403, 414, 815 S.E.2d 467, 472 (Ct. App. 2018) ("As the party alleging misconduct, [the defendant] bore the burden of proving [the juror] was biased or could not otherwise follow her oath."). Ruttle never subpoenaed Jeffries, nor produced an affidavit or other form of sworn testimony from Jeffries, nor requested the trial court require Jeffries to appear. We cannot say based on the videos and Mims's testimony, it is either clear and convincing or more likely than not that Jeffries is the same Nysha who attended the Church. *See State v. Covington*, 343 S.C. 157, 164, 539 S.E.2d 67, 70 (Ct. App. 2000) (finding evidence of juror misconduct is evaluated under a clear and convincing standard); *State v. Fletcher*, 379 S.C. 17, 24, 664 S.E.2d 480, 483 (2008) ("Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established. Such proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt; it does not mean clear and unequivocal."); *Covington*, 343 S.C. at 164, 539 S.E.2d at 70 (finding that a clear and convincing standard need not be applied when juror concealment cannot first be proven under the lesser preponderance of the evidence standard); *Groesbeck v. Marshall*, 44 S.C. 538, 545, 22 S.E. 743, 744-45 (1895) (finding to establish a defense under a preponderance of the evidence standard, a party must convince the trial court the grounds for its defense are more likely than not to have occurred). Accordingly, the trial court did not abuse its discretion in finding Jeffries did not give false or misleading answers during voir dire.

During oral arguments, Ruttle heavily relied on *Hand v. Savannah & Charleston Railroad Co.*, which he submitted as a supplemental citation following arguments. 17 S.C. 219 (1882). We accepted the citation; however, we distinguish it from the present case. In *Hand*, the defendant company sought to estop persons funding bonds from claiming a prior lien under a former act. *Id*. at 222-25. Our supreme court found when evidence was presented that a person who held a bond and whose name also appeared in the company's ledger,

> such concurrence and coincidence would be at least
> presumptive that the bonds [that] [the person] now holds

> are the bonds [that] he held at the time he funded the
> coupons, and the burden of proof is upon him to show
> that he did not hold the bonds [that] he now holds at the
> time of the funding.

*Id*. at 224.

Ruttle also cites *State v. Rawls* in his supplemental citation. 11 S.C.L. (2 Nott & McC.) 331 (1820). In *Rawls*, the court found a name was presumptive of identity when a witness, who did not know the defendant, testified he heard on two occasions the defendant be addressed by a name, respond to that name, and the defendant later pleaded to the indictment under that same name. We do not interpret *Hand* or *Rawls* to mean concurrence and coincidence of name in all circumstances leads to a presumption of identity. The facts, circumstances, procedural postures, and standards of review of *Hand*, *Rawls*, and the present case differ drastically.[7] Also, both *Hand* and *Rawls* contain corroborating facts beyond name alone to support the presumption.[8] The facts in the present case do not sufficiently support the presumption. Accordingly, Ruttle failed to prove identity, and therefore that Jeffries concealed information.

In addition to proving a juror concealed information, the party moving for a new trial must also establish bias. *See State v. Zeigler*, 364 S.C. 94, 108, 610 S.E.2d 859, 866 (Ct. App. 2005) ("Where a defendant seeks a new trial on the basis of juror misconduct, he is required to prove both the alleged misconduct and the resulting prejudice."). Our supreme court recently revised the framework used to assess alleged juror concealment. *See State v. Rowell*, 444 S.C. 109, 115, 906 S.E.2d 554, 557 (2024) ("The juror's intent may bear on the inquiry, but the ultimate question remains whether the juror was biased and whether the bias, in turn, caused prejudice."). Under this new framework, trial courts need not distinguish between intentional and unintentional concealment. Further,

---

[7] *Hand* was a civil case, which began when the plaintiff sought to enjoin the defendant railroad company from selling a road. Though *Rawls* is a criminal case, the cited portion is from the hearing before the Constitutional Court of Appeals of South Carolina. Further, the defendant's identity was at issue in *Rawls*, not a juror's.

[8] In *Hand*, bond owners were identified by proof of bond ownership corroborated by their names in the company's official ledger to verify time of acquisition. Similarly, in *Rawls*, the witness's testimony that he heard the defendant called by a certain name was corroborated when the defendant pleaded under the same name.

the juror's bias may not be presumed, and a new trial may be ordered only when prejudice is proven by showing the concealed information reveals a potential for bias and would have made an objectively material difference in the moving party's use of a peremptory strike or resulted in a successful challenge for cause.

*Id*. at 16.

Assuming Jeffries and the Nysha shown in the Church videos were the same person, Ruttle did not show the allegedly concealed information would have made a difference in the *moving* party's use of a peremptory strike or challenge for cause. Ruttle failed to prove Jeffries concealed information and her alleged association with the Church reveals no potential for bias against Ruttle. Accordingly, we affirm the trial court's denial of Ruttle's motion for a new trial.[9]

2. The trial court did not abuse its discretion by failing to grant Ruttle immunity under the PPPA. *See State v. Manning*, 418 S.C. 38, 43, 791 S.E.2d 148, 150 (2016) (finding circuit courts utilize pretrial hearings to determine whether a defendant is entitled to immunity under the PPPA by applying a preponderance of the evidence standard); *id*. at 45, 791 S.E.2d at 151 ("[Appellate courts] review immunity determinations under an abuse of discretion standard."); *Jones*, 416 S.C. at 290, 786 S.E.2d at 136 ("An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support."). Section 16-11-440(C) provides immunity from prosecution if a person is found to be justified in using deadly force under the PPPA. *See State v. Davis*, 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984) ("There are four elements required by law to establish self-defense in this case. First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger.

---

[9] *Rowell* held the trial court erred by "declin[ing] the [defendant's] request for an evidentiary hearing so [a] [j]uror . . . could be examined as to whether his pending charges could have caused him to be biased." *Id*. at 116, S.E.2d at 558. Our supreme court's reasoning was that "[e]valuating the merits of a juror misconduct claim is a fact-intensive inquiry, which is most appropriately conducted after a hearing." *Id*. (quoting *McCoy v. State*, 401 S.C. 363, 371, 737 S.E.2d 623, 628 (2013)). We agree but distinguish *Rowell* from the present case in which a posttrial hearing was held and Ruttle did not produce Jeffries at that hearing.

Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. [10]   If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life.  Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance"); *See also State v. Cervantes-Pavon*, 426 S.C. 442, 451, 827 S.E.2d 564, 569 (2019) (finding when the evidence conflicts as to the issue of immunity, "the court must sit as the fact-finder at this hearing, weigh the evidence presented, and reach a conclusion under the [PPPA]" and then, "if the circuit court determines the movant has not met his burden of proof as to immunity, the case will go to trial, and the issue of self-defense may—depending upon the evidence presented at trial—be presented to the trial jury"); *Terwilliger v. Marion*, 222 S.C. 185, 188, 72 S.E.2d 165, 166 (1952) ("The fact that evidence is not contradicted by direct evidence does not render it undisputed, as there still remains the question of its inherent probability and the credibility of the witness or his interest in the result.  To justify a [c]ourt in instructing a jury that a witness has told the truth, and in directing a verdict based on the truthfulness of his evidence, there must be nothing in the circumstances or surroundings tending to impeach the witness or to throw discredit on his statements.  If there is anything tending to create distrust in his truthfulness, the question *must* be left to the jury." (emphasis added) (quoting *Green v. Greenville County*, 176 S.C. 433, 180 S.E. 471, 473 (1935))).  Here, none of the exceptions allowing a presumption of imminent fear apply.  Therefore, Ruttle had to meet all four of the self-defense elements outlined in *Davis* under a preponderance of the evidence standard to be entitled to immunity from prosecution.  This court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009).  A knife was recovered at the scene, which Ruttle alleged the victim, Dalton Moore, threatened him with.  However, evidence supports the trial court's finding that Ruttle did not act in self-defense but brought on the difficulty and his use of deadly force was not reasonable under the circumstances given the following facts: Ruttle's friend and codefendant, Lorenzo Calderon, had prior conflicts with Moore including an altercation earlier on the day

---

[10] A rebuttable presumption of imminent fear is provided under section 16-11-440(A), (D), and (E); however, this consideration is limited to circumstances in which someone enters a residence, vehicle, or business without permission or attempts to remove someone against his or her will.

of the killing; after spotting Moore from the road, Ruttle followed Moore in his car with Calderon in the passenger seat; while Calderon waited in the car, Ruttle, armed with a concealed handgun Calderon provided, approached Moore; after killing Moore, Ruttle fled the scene with Calderon driving; and Ruttle disposed of the clothes he was wearing at the time of killing and the handgun and lied about his whereabouts when questioned by law enforcement.  Accordingly, Ruttle failed to establish by a preponderance of evidence he was entitled to immunity, and we affirm the trial court's denial of immunity under the PPPA.

3.  Although the trial court did err in providing both an implied malice and a self-defense jury instruction, this issue was unpreserved.  Alternatively, if preserved, the error was harmless.  *See State v. Smith*, 430 S.C. 226, 234, 845 S.E.2d 495, 499 (2020) (per curiam) ("[A]n implied malice charge should not be given if there has been evidence presented that the defendant acted in self-defense.").[11]  The State argues *Smith* only addressed an implied malice instruction in the context of a felony attempted murder.  We disagree.  *Smith* established that a jury may not be instructed on both implied malice and self-defense.  *Id*.  Our supreme court reasoned that because malice is admitted in a self-defense claim but excused for the protection of oneself or others, providing both instructions is contradictory and risks misleading a jury.  *Id*.  However, Ruttle never raised this issue with the trial court and we cannot consider unpreserved issues on appeal.  *See State v. Nichols*, 325 S.C. 111, 120, 481 S.E.2d 118, 123 (1997) ("An issue may not be raised for the first time on appeal, but must have been raised to the trial [court] to be preserved for appellate review."); *State v. Rogers*, 361 S.C. 178, 183, 603 S.E.2d 910, 912-13 (Ct. App. 2004) ("There are four basic requirements to preserving issues at trial for appellate review.  The issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity." (quoting Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 57 (2d ed. 2002))).

Further, even had the issue been properly preserved, the error was harmless.  *See Burdette*, 427 S.C. at 496, 832 S.E.2d at 578 ("An erroneous instruction alone is

---

[11] Notably, this differs from the rule established by *Smith*'s predecessor, *State v. Burdette*.  427 S.C. 490, 503, 832 S.E.2d 575, 582 (2019).  In *Burdette*, our supreme court held a jury instruction that malice can be inferred from the use of deadly weapon may not be given.  *Id.*  Though Ruttle alleges the trial court gave such an instruction, we disagree.  The trial court gave an implied malice instruction; however, this instruction never indicated malice could be inferred from Ruttle's use of the handgun in the killing.

insufficient to warrant [an appellate court's] reversal."); *Smith*, 430 S.C. at 233, 845 S.E.2d at 498 ("[E]rroneous jury instructions are subject to a harmless error analysis."); *Burdette*, 427 S.C. at 496, 832 S.E.2d at 578 ("When considering whether an error with respect to a jury instruction was harmless, we must 'determine beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" (quoting *State v. Middleton*, 407 S.C. 312, 317, 755 S.E.2d 432, 435 (2014))); *id.* at 496, 575 S.E.2d at 578-79 ("In making a harmless error analysis, our inquiry is not what the verdict would have been had the jury been given the correct charge, but whether the erroneous charge contributed to the verdict rendered." (quoting *State v. Kerr*, 330 S.C. 132, 145, 498 S.E.2d 212, 218 (1998))); *State v. Reyes*, 432 S.C. 394, 406, 853 S.E.2d 334, 340 (2020) ("'[O]verwhelming evidence' of a defendant's guilt is a relevant consideration in the harmless error analysis."). Given the overwhelming weight of the evidence of guilt, any error in the jury instructions was harmless. Therefore, although the trial court erred in providing both a malice and self-defense instruction, the error is unpreserved and harmless. Ruttle's conviction is

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and TURNER, JJ., concur.**